**THOMPSON v. BELL.**
No. 9063.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1942.

Alexis J. Rogoski, of Muskegon, Mich., for appellant.

Alfred H. Highland, of Hammond, Ind. (Alfred H. Highland and Bomberger, Peters & Morthland, all of Hammond, Ind., and Paul E. Cholette and Alexander, McCaslin & Cholette, all of Grand Rapids, Mich., on the brief), for appellee.

Before HICKS, SIMONS and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

In this action of negligence brought by a minor through her guardian, appellee has the verdict. Appellant reserved numerous exceptions to the charge given and refused by the trial court and prosecutes this appeal seeking reversal and a new trial. The material primary facts are not in serious dispute and are substantially as follows:

Appellant, Joan Thompson, was fifteen years of age at the time of her injuries. She and her family, during the summer months, lived in Ogden Dunes, a summer resort in the State of Indiana, which was reached by a much traveled highway referred to in the record as U. S. 12. About 9:30 o'clock P. M. on August 27, 1938, appellant, with thirty other young people, was riding on paved highway U. S. 12 on a horse-drawn hayrack, when a truck owned by appellee and traveling in the same direction, struck the rear end of the hayrack throwing appellant to the ground, as a result of which she sustained a fractured left ankle and severe body bruises.

A group of young people living at Ogden Dunes, including members of the Rafters Club to which appellant belonged, for some time previous to the accident had been discussing a farewell party for the close of the summer season which was on Labor Day. Someone suggested a hayride which was agreeable to all the group. Appellant was invited to go on the hayride by Phillip Cochran and she accompanied him. She contributed no sum toward the expenses of the trip. She took part in the discussions of the affair held by the group of young people who were to participate. The town marshal owned a Model-A Ford chassis, 6 feet wide and 12 feet long, equipped with pneumatic tires, which vehicle was horse-drawn and which the owner used for hauling hay and which was usually driven for him by Gus Lawson an employee of the owner. George Simerau and some of the other young men residents

of Ogden Dunes appealed to the town marshal for the loan of the hayrack and a team of horses. When the group asked for the use of the vehicle, the town marshal objected, advising them he thought a hayride unsafe and a bad idea. On their insistence, however, he agreed on condition that Lawson should do the driving. Before the hayrack was used for the outing, the owner equipped it with two standards about 3½ feet high and 3 feet apart which were at the front. On the top of each was affixed a white spotlight, the left-hand light facing forward and the right-hand light focused to the rear, with no red taillight or reflector. The lights had been installed for the purpose of showing the presence of the vehicle on the highway.

The original plan was to ride over the sand roads of Ogden Dunes and vicinity, but when the crowd collected there were about thirty in the group and they decided, because of the weight the horses would have to pull, it would be better to drive over the hard-top roads. They were to have a wiener roast later and just before the departure for the trip, one of the boys collected either 25 cents from each couple or 25 cents from each person (the record is not clear which) to pay the driver. About 9:30 in the evening they left the town policeman's shanty where they had congregated for the take-off and which was located approximately 1500 feet north of U. S. Highway 12, and on the Main Street of Ogden Dunes. Appellant was seated on the right side of the hayrack about two-thirds of the way towards the front.

The vehicle driven by Lawson proceeded across the U. S. Highway 12 to Lee's filling station which is located on the southeast side of the highway, almost directly opposite the entrance to Ogden Dunes, with a large driveway extending in both an easterly and westerly direction, which driveway is used by cars entering the station from the highway and for leaving the station to re-enter the highway. The hayrack was stopped at the filling station for the purpose of having air put in the tires and was then driven to the rear of the station and on to the highway from the easterly side and had traveled from 200 to 300 feet from the station in an easterly direction when struck in the rear by appellee's truck which was traveling in the same direction. At the time of the collision about 2 feet of the hayrack was on the pavement and 4 feet off on the south berm of the road.

Appellee's truck driver was driving at a speed of from 25 to 30 miles an hour and meeting westbound traffic and claimed he saw the hayrack only when he was within 40 or 50 feet of it, having just passed an eastbound automobile. He did not sound his horn but applied his brakes and turned his truck as far as possible to the left without colliding with a car coming toward him. At the time of the accident, the lights on the filling station were lighted. The station was equipped with an overhanging canopy around its edges with four lights on each of its sides and three in front. It also had four pumps in line, each lighted. There was also a shield in front of the station 20 feet above the pavement, and 20 feet off the paved road. The shield had 50-watt white lights. The driver of the truck testified that the filling station lights were parallel to the spotlights on the hayrack and that because of the location of the lights, each blended into the other so that he could not see the hayrack until he had passed the car going in the same direction. He stated his lights were bright and threw a beam of 200 feet or more. Other witnesses who saw the hayrack on the highway testified that the spotlight on it made it clearly observable for a distance of 1000 feet and at 200 feet the lights were so bright the individual occupants could be recognized by persons acquainted with them.

Appellant stated that she saw cars coming toward the hayrack from the rear and also from the other direction, but that she did not see the truck until the moment of the crash and prior to that time she had not heard a warning or anything that indicated the imminence of an accident.

At the time of the accident in question, the State of Indiana had in full force and effect a statute which required every operator of a vehicle on its highways from one-half hour after sundown until one-half hour before sunrise to have attached to the rear end of the vehicle at least one red light or a red reflector, clearly visible for a distance of 500 feet from the rear of the vehicle. Laws Ind.1927, c. 110, § 1.

In the course of his charge, the trial judge instructed the jury in substance that the mere fact that appellant was a passenger on the hayrack did not result in imputing to her the responsibility for all of the negligent acts of which the driver

or owner of the vehicle was guilty, nor could she be held liable for the failure of the driver or owner of the vehicle to display the red light on the rear of the vehicle as provided under the Indiana Statute, except as was further explained in the charge.

The court, continuing its charge, stated to the jury that if they believed from a preponderance of the evidence that appellant, together with others riding on the hayrack, was engaged in a joint enterprise or undertaking and that she at the time of the accident had some authority to control and direct the operations or movement of the vehicle, she was responsible for all the negligent acts of the owner or the driver of the vehicle as though she had committed such acts personally.

The case was given to the jury about 10:-30 o'clock on the morning of March 6, 1941, and shortly before noon on the same day, the jury returned to the court room and had the court repeat the foregoing charge. The jury then retired and later in the afternoon returned and requested the court to give further instruction on the law of joint enterprise. Thereupon the court added to the charge the following: "If you find from a preponderance of all the evidence relevant thereto that at the time and place of the accident in question the plaintiff was a member of a club or social group, which club or group, in which plaintiff participated had borrowed the vehicle upon which plaintiff was then and there riding, and which said club or group determined the place and time of departure, the route and the destination of such vehicle, and if you further find from a preponderance of all the evidence relevant thereto that the plaintiff entered upon and was occupying such vehicle at the time and place of the accident in question as such member of such club or group, then I instruct you that the plaintiff was then using such vehicle within the terms of the law heretofore outlined to you in this charge, and is chargeable with any violation of such law as a user of such vehicle."

In our opinion the charge of the court in this particular was clearly erroneous and prejudicial.

■■ The rule of imputed negligence or of contributory negligence stemming from a joint enterprise, rests upon the relationship of agency existing inter sese among persons engaged in a joint or common enterprise. Louisville, New Albany and Chicago Railroad Company v. Creek, Adm'r, 130 Ind. 139, 29 N.E. 481, 14 L.R.A. 733. Since the theory upon which the doctrine of joint enterprise rests is that the associates in the enterprise are partners or that each is an agent for the others, it becomes material to determine whether appellant was capable of entering into an agency or partnership association to the extent that she could be held liable for the negligence of her co-agent in which she did not personally participate.

■ In order that a negligent act or omission of a third person may bar a plaintiff from recovery, the relationship between plaintiff and the third person must be such as to make the plaintiff responsible at common law to others who may be harmed by the same or a similar negligent act or omission of such third person. Restatement of the Law of Torts—Negligence 485, p. 1267.

■ It is well settled that an infant is liable for his torts and depending on his age is also liable for his contributory negligence, but when he is charged with vicarious negligence or imputed contributory negligence a different rule applies. Since an infant cannot create the relationship of principal and agent, it is generally held that an infant cannot be made liable for the negligence or the contributory negligence of one impliedly acting for him. This is clearly the rule prevailing in Indiana. City of Evansville v. Senhenn, 151 Ind. 42, 47 N.E. 634, 51 N.E. 88, 41 L.R.A. 728, 68 Am.St.Rep. 218; Burns v. Smith, 29 Ind.App. 181, 64 N.E. 94, 94 Am. St.Rep. 268; Rice v. Boyer, 108 Ind. 472, 9 N.E. 420, 58 Am.Rep. 53. Under this rule the driver's contributory negligence, if any, in moving the vehicle onto the highway without the red lights required under the Indiana statute could not be imputed to appellant. Even though appellant was capable of becoming a member of a joint enterprise such relationship did not exist under the facts in the case at bar, so as to make her liable for the acts of her joint adventurers.

It is undoubtedly true that all the young people in this party as they drove over the highway to the place where they planned to have the wiener roast had a common interest in the object and purpose of the undertaking, but proof that each had an equal right in the control and management of the hayrack is entirely lacking in the record. The evidence shows that several

members of the party arranged for the use of the hayrack on the occasion in question, but one of the conditions laid down by the owner of the vehicle was that it was to be in charge of his driver. It nowhere appears in the evidence that the driver surrendered his personal control over the movement of the vehicle but he did follow the directions of some members of the party as to what particular route he would travel. The evidence affirmatively shows appellant took no part in the procurement of the vehicle or interfered with the driver in its use or that she assumed any responsibility for, or control over, its operation, or that she had any right to do so. The law has well established that before a joint enterprise or common purpose arises within the meaning of the law of imputed negligence, there must be proof of a community of interest in the joint prosecution of a common purpose under circumstances where each participant has the authority to act for all in the direction and control of the means or agency which is employed to carry out the enterprise. The test of a joint enterprise between the driver of a vehicle and another occupant is whether they jointly operated and controlled the movements of the vehicle or had an equal right to do so. The absence of this essential element in the case at bar brings it within the rule laid down in Union Traction Company v. Gaunt, 193 Ind. 109, 135 N.E. 486, that the passenger as well as the driver must be entitled to a voice in the control and direction of the vehicle before the contributory negligence of the driver can be imputed to the passenger.

The fact that the passenger indicates the route or that the parties have certain plans in common, such as a hayride, does not bring into play the rule of imputed contributory negligence of one to the other. The community of interest must be such that the passenger is entitled to the joint or common possession of the vehicle. Pope v. Halpern, 193 Cal. 168, 223 P. 470; Barry v. Harding, 244 Mass. 588, 139 N.E. 298; Lawrence v. Sioux City, 172 Iowa 320, 154 N.W. 494.

Appellant also urges that the court erred in denying her motion to instruct the jury that under the facts in the case appellee's driver was guilty of negligence as a matter of law. Her contention is without merit. The driver testified the hayrack was partly off the road and that his view of it was obstructed by a car immediately in front of him and traveling in the same direction. He said he passed the car between him and the hayrack and was meeting another car when he suddenly came upon the hayrack and that he could not pull the truck to the left far enough to avoid striking the hayrack without colliding with the oncoming car. He also said he applied his brakes and used every effort to stop the truck before it struck the hayrack but without avail. The court properly submitted to the jury the question of appellee's negligence. Opple v. Ray, 208 Ind. 450, 195 N.E. 81.

No useful purpose would be served by extending this opinion to consider separately each of the instructions tendered by appellant and refused by the court. Briefly, appellant requested the court to charge that the fact she was riding on a vehicle without rear display lights as required under the Indiana Statute did not constitute contributory negligence as a matter of law unless the jury found from the evidence that the absence of such lights was the sole proximate cause of her injuries. Appellant further requested the court to charge that no duty rested on her to anticipate that appellee would be guilty of negligence in the operation of his truck and trailer, and also that a passenger in a vehicle owes a very limited degree of care on his part and has a right to assume that the driver will manage the vehicle in a careful and prudent manner.

Appellant also requested the court to charge that if the jury found from the evidence that appellant's injuries would not have been sustained but for appellee's negligence, then such negligence was the proximate cause of her injuries although the driver of the hayrack may have been guilty of concurrent negligence. The court refused all of these requests and gave the ordinary charge of negligence and contributory negligence. The charge of the court should have been more specific.

It is essential that the acts complained of as constituting contributory negligence contribute directly and proximately to the accident and that contributory negligence arising out of the violation of a statute in order to defeat recovery must have been a proximate cause of the injury. A person riding in a vehicle driven by another, although generally not chargeable with the driver's negligence, is under the duty of exercising ordinary care for his own safety but, unless the evi-

dence clearly shows that the passenger or guest failed to exercise such care, then the question of whether he was guilty of negligence contributing to his injury is primarily for the jury. In the case at bar the burden was cast on appellee to show that appellant failed to exercise such care for her own safety as was required of her. The question here then is whether there was any evidence directly showing or from which an inference might be drawn, that appellant's acts and conduct in question so contributed to her injuries as to exonerate appellee from liability. There is no evidence of any overt or affirmative act of negligence on the part of the appellant showing that she participated in the negligence, if any, of the driver or that the driver was incompetent, or that appellant had any reason to suppose that the driver was not competent to drive the horses properly or to believe that he was not keeping a proper lookout for vehicles approaching him from either direction on the highway.

■ If the hayrack used for transportation over the highway referred to in the evidence without being lighted as required under the Indiana statute, was a dangerous instrumentality and appellant exposed herself to this danger by riding on the vehicle, the danger being so imminent and obvious that a person of ordinary prudence under like circumstances and with like knowledge would not have subjected himself to it, she was guilty of contributory negligence. Under the facts of this case the question of appellant's contributory negligence on this account was for the jury.

■ The court, on retrial, will in substance charge the jury that if they believe from a preponderance of the evidence that the hayrack was a dangerous instrumentality on which to ride at the time and on the occasion in question and that plaintiff, by riding on it, exposed herself to a known or imminent danger and such act on her part contributed to her injuries, the jury will find for defendant.

■ The court also should instruct the jury that if the accident resulting in plaintiff's injuries was caused by the concurrent negligence of the driver of the hayrack and the driver of defendant's truck and that plaintiff was free from contributory negligence, the jury should find for her. Union Traction Company v. Haworth, 187 Ind. 451, 115 N.E. 753, 119 N.E. 869.

Cause remanded for a new trial conformable to this opinion.