**UNITED STATES of America,
Appellee,**

**v.**

**Michael MONICA, Defendant-Appellant.**

No. 8, Docket 26758.

United States Court of Appeals
Second Circuit.

Argued Sept. 26, 1961.

Decided Oct. 23, 1961.

Certiorari Denied Jan. 8, 1962.
See 82 S.Ct. 395.

Allen S. Stim, New York City (Menahem Stim and Allen S. Stim, New York City, on brief), for appellant.

Joseph J. Marcheso, Brooklyn, N. Y. (Joseph P. Hoey, U. S. Atty., E.D.N.Y., Margaret E. Millus, Asst. U. S. Atty., Brooklyn, N. Y., on brief), for appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

Michael Monica appeals from a judgment of the District Court for the Eastern District of New York, rendered after a verdict convicting him of conspiracy to violate 21 U.S.C.A. § 174, which prohibits among other things the transportation or sale of illegally imported narcotics, and sentencing him to imprisonment for a term of eight years. The conspiracy count of the indictment named nine other defendants; eight of them pleaded guilty and the ninth was found so by another jury. The only points argued, or meriting argument, were the sufficiency of the evidence, both generally and in particular relation to the "possession" which the final sentence of § 174 makes "sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury," and the charge.

The Government presented ample evidence, not limited to that summarized below, to show a conspiracy in the spring of 1959, wherein orders for narcotics were accepted by defendant John Freeman at the Palm Florist Shop in Brooklyn; narcotics were ordered by Freeman from defendant Joseph Valachi, a resident of the Bronx; deliveries were made by Valachi or his associates to Freeman or Freeman's associate, defendant Horton; and deliveries to the customer were effected, or attempted, by Horton or other associates of Freeman.

The first issue is whether there was sufficient evidence to link Monica

with this conspiracy. The Government's evidence to that end may be summarized as follows:

(1) On March 30, some time after a narcotics agent had placed an order for heroin with John Freeman, the latter met Horton in the afternoon at the Palm Florist's in Brooklyn, and again early in the evening at the Esquire Florist Shop, another Freeman enterprise, in Harlem. Late in the afternoon defendant Wagner visited Valachi's residence in the Bronx. In the early evening Wagner met defendant Sperling, Monica saw Valachi for five minutes at the Bronx apartment of a Mrs. Cuccuru, and Wagner, Sperling and Freeman assembled briefly at the Esquire Florist Shop. Sperling then drove off from the shop in a green Oldsmobile for the Bronx, where he parked the car and left it. An hour later Monica paid a half-hour visit to the Cuccuru apartment, returning again at 1:15 A.M. on March 31; Valachi there handed Monica a brown paper package which Monica put inside his shirt pocket. Meanwhile Horton had gone to the Bronx River Bar. Monica then met Wagner and Sperling at another Bronx bar, the Maple, each arriving separately. Sperling left the Maple Bar, went to the green Oldsmobile, placed a package under the seat, and walked past the Bronx River Bar, nodding as he did. Horton emerged, entered the parked Oldsmobile, drove to Brooklyn, and sold a package containing heroin to a special employee of the Narcotics Bureau.

(2) On the evening of April 4, Horton drove a green Oldsmobile to the same location in the Bronx and again entered the Bronx River Bar. A black Ford, with Monica the driver and Wagner a passenger, slowly passed the Oldsmobile, made a U-turn, and passed it again. Monica and Wagner returned an hour later. Wagner got out of the Ford, opened the Oldsmobile with a key, and placed a brown paper bag on the driver's seat. He walked to the Bronx River Bar and went in; an hour later Horton exited and drove off in the Oldsmobile, only to be apprehended by a New York City detective who found in the car a brown paper bag containing packages of heroin.

(3) In the morning of May 6 a Federal narcotics agent ordered 20 ounces of "cut stuff" from John Freeman who undertook to make delivery on May 7. On the evening of May 6, shortly after Freeman had reconfirmed the deal, an agent heard Valachi and Monica outside a theater in the Bronx in a conversation described as follows:

"Vallacci [sic] said, 'John's customer in Brooklyn is taking a half' and the defendant Michael Monica said, 'A half' he said 'All right' and Vallacci said, 'Get a half and a quarter, too' and the defendant said, 'A half and a quarter—okay,' and Vallacci said to Monica, 'Be careful' and that was it."

Monica left in a black Ford. The following evening lieutenants of Freeman made a delivery of 120 envelopes, containing 121 ounces of heroin, to the narcotics agent.

Whether the test of sufficiency of the evidence for the jury in a criminal prosecution be properly phrased as simply that "the evidence would have been enough in a civil action," United States v. Costello, 2 Cir., 1955, 221 F.2d 668, 671 affirmed, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397, and cases there cited, or, as reasoned by Judge Hutcheson in Cuthbert v. United States, 5 Cir., 1960, 278 F.2d 220, 224, that the evidence must be "substantial enough to establish a case from which the jury may infer guilt beyond a reasonable doubt," see United States v. Lefkowitz, 2 Cir., 1960, 284 F.2d 310, 315, the evidence here met it. Each of the three episodes gained color from each of the others. Thus, even though we assume *arguendo* that the March 30–31 episode might not alone have furnished a sufficient basis for inferring beyond reasonable doubt that the package which Valachi handed Monica was the same package which, after a sojourn in the parked green Oldsmobile, was delivered to the special employee in Brooklyn, there being no such particularized evidence of identity as was offered in United States

v. Montalvo, 2 Cir., 1959, 271 F.2d 922, the incident surely did establish such a basis when coupled with the similar episode on April 4–5 and the Monica-Valachi conversation on May 6. By the same token, any contention that Monica was an innocent chauffeur for Wagner on April 4–5 loses almost all its underpinning when the events of that evening are linked with the evidence tending to show Monica's participation in the earlier and later deliveries. Similarly, whatever force there might otherwise be in the argument that "A half and a quarter," as to which Valachi adjured Monica to "Be careful" on May 6, might have been candy or kerosene, to be delivered to one of the countless other Johns in Brooklyn —and that would hardly be much [1]—is altogether eliminated when this episode is linked with its two predecessors. Conceivably Monica's connection with a single incident might have been without guilt or causality; it would demand more credulity than the law requires to suppose he was an unfortunate victim of coincidence on three occasions in a span of thirty-eight days. And if the evidence in the aggregate warranted a finding of guilt beyond a reasonable doubt as to any one incident, it did as to all three.

■ For my brothers the issue as to the sufficiency of evidence of possession is easy. Under the views expressed by them and Judge Moore in United States v. Santore, 2 Cir., 1959, 290 F.2d 51, on rehearing *in banc*, 2 Cir., 1960, 290 F.2d at page 74, it would be enough that any member of the conspiracy was proved to have had possession, and the evidence on that score was ample. For me the question presents more problems. In Santore, I joined with Judges Clark and Waterman in the view that, in the absence of proof of knowledge of importation, conviction of an aider and abettor under 21 U.S.C. § 174 was not sustainable without proof of possession on his part. In United States v. Hernandez, 2 Cir., 1961, 290 F.2d 86, 90, the majority applied this view to a conspirator—a conclusion I should have thought arguable but not inevitable. Assuming that proof of possession on appellant's part was here required, I find the evidence sufficient. Like any other element in the prosecution's case, possession need not be proved by direct evidence but may be established by proof permitting an inference to be drawn beyond reasonable doubt. As heretofore stated, the evidence warranted a finding of participation by Monica on each of the three occasions. On that basis, there was enough to justify the jury in finding possession in the physical sense on March 30–31, and also on May 6–7, see footnote 1; hence it is unnecessary to debate whether the evidence was also sufficient to find possession on April 4–5 on principles akin to those applied in United States v. Santore, supra, 290 F.2d at pages 75–78, 81 with respect to defendant Lo Piccolo, United States v. Buonanno, 2 Cir., 1961, 290 F.2d 585, and Cellino v. United States, 9 Cir., 1960, 276 F.2d 941, and relied on as an alternate ground in United States v. Cox, 2 Cir., 1960, 277 F.2d 302, 303.

■ The judge charged that under 21 U.S.C.A. § 174 "possession of narcotics

1. Appellant argues that even if the jury could properly infer that "a half" meant a half a kilogram, the unit of weight common in the narcotics trade, there was no correlation between that weight and the 20 ounces ordered by the narcotics agent. A half kilogram weighs approximately 1.1 lb. or slightly less than 18 avoirdupois ounces, so the discrepancy on that basis would not be very great; however, appellant says drugs are measured in apothecaries' ounces of which there are only 12 in a pound. The Government answers that the order was for "cut stuff," so that a half kilo of pure heroin could well make 20 apothecaries' ounces of "cut stuff." Granted that all this is debatable, the evidence warranted the jury in finding it scarcely coincidental that on the same day when John Freeman had accepted a narcotics order, Valachi, who could well have been found to have been Freeman's source in the similar transaction of March 30–31, commissioned Monica to obtain for "John's customer in Brooklyn" a "half" of something as to which Monica must "be careful," and that narcotics were delivered to "John's customer" the next day.

by an accused need not be physical possession. Such possession may be constructive possession, i. e., by an individual over which the accused has dominion or control, or possession by co-conspirators or agents, if any, of the accused." Under the view expressed by my brothers in Santore this was entirely correct; on the other hand, if the view in which I there joined is properly applicable to a conspirator, as held in Hernandez, the last portion of the quotation would have been too broad. However, no exception was taken to it, and I see no reason to invoke the plain error rule, F.R.Crim.Proc. 52(b), 18 U.S.C.A.

There was no error in the refusals to charge or in any of the other rulings assailed in appellant's brief.

Affirmed.