Bernardino Chirez **HERNANDEZ**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 17482.

United States Court of Appeals. Ninth Circuit.

Feb. 9, 1962.

Rehearing Denied March 15, 1962.

Henry C. Thumann, Lawrence J. Sheehan and Rodney E. Nelson, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan and William D. Keller, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, MERRILL and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

■ 21 U.S.C. § 174, 21 U.S.C.A. § 174 [1] makes it a federal offense to import narcotic drugs illegally or to deal with such drugs knowing that they have been illegally imported. The statute provides that whenever the defendant is shown "to have * * * possession" of nar-

---

1. Omitting the specification of penalty, 21 U.S.C. § 174, 21 U.S.C.A. § 174 reads as follows:

"Whoever fraudulently. or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned * * *.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

cotic drugs, "such possession" shall be sufficient to convict unless explained to the satisfaction of the jury. We have held in earlier cases that a defendant has "possession" of narcotic drugs within the meaning of the statute whenever the evidence, direct or circumstantial, shows that he personally shared physical custody of the narcotic drugs or had dominion and control over them. We hold in the present case that a defendant does not "have possession" of narcotic drugs within the meaning of the statute when he has neither personal physical custody nor control over the drugs, although he has engaged in a common scheme or plan with a third person, not on trial, who did have such personal custody or control of narcotic drugs.

## I

We turn first to the circumstances of the present case.

■ Defendant and Jesus Joseph Correa were charged with violations of 21 U.S.C. § 174, 21 U.S.C.A. § 174 in a three-count indictment. Count 1 charged them with conspiring to receive, conceal, transport, and sell (and to facilitate the concealment, transportation and sale) of heroin which the defendants knew had been imported contrary to law; Count 2 charged them with selling and facilitating the sale of the same heroin with the same knowledge; Count 3 charged them with receiving, concealing, and facilitating the concealment and transportation of the same heroin with the same knowledge.

Correa was a fugitive, and defendant stood trial alone. Neither the government nor the defendant has designated the transcript of the evidence as part of the record on this appeal. From the briefs it appears that the defendant arranged a sale of heroin to a government agent through a government informer and met by prearrangement with the informer and the agent in the informer's hotel room, but that he left the hotel room and was not present when Correa subsequently delivered the heroin to the government agent and collected the purchase price.

The trial court, sitting without a jury, filed findings of fact and conclusions of law which form the basis of our review. The court found that neither illegal importation of the heroin nor personal knowledge by the defendant that the heroin was illegally imported had been proved. The court further found that it had not been proved that the defendant personally had either physical possession of the heroin or power to control it. The court found that "the conspiracy to violate 21 U.S.C. § 174 [21 U.S.C.A. § 174] charged in count 1 of the indictment was not proved."

Nonetheless, the court found that the defendant and the fugitive Correa were parties to "a common scheme or plan" to sell the heroin, that the heroin was sold and delivered pursuant to that common scheme or plan, and that Correa had actual physical possession of the narcotics in furtherance of the common scheme or plan. The court concluded that the actual possession of Correa was to be imputed to the defendant as a matter of law because of the common scheme or plan, and that as a matter of law this "imputed possession" was sufficient to allow conviction of the defendant under Section 174 without proof of either illegal importation of the narcotic drug or knowledge by the defendant of that illegal importation.

We are thus presented with the question of whether a defendant is "shown to have or to have had possession of the narcotic drug" for the purposes of the rebuttable presumption of guilt established by Section 174, upon proof of actual possession by one not on trial with whom defendant has participated in a common scheme or plan.

## II

■ Unhappily, this court has had more frequent occasion than most to consider the meaning of the term "possession" in 21 U.S.C. § 174, 21 U.S.C.A. § 174. We early held that "possession" of narcotic drugs sufficient to support the

inference of guilt under the statute meant "having [the narcotic drugs] in one's control or under one's dominion." Mullaney v. United States, 82 F.2d 638, 642 (9th Cir. 1936), and we have recently re-examined and re-affirmed this basic position. Rodella v. United States, 286 F.2d 306 (9th Cir. 1960), cert. denied 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199.[2] As the Rodella opinion and the authorities which it cites amply demonstrate, it follows from this definition of "possession" in Section 174 that so long as the evidence establishes the requisite power in the defendant to control the narcotic drugs, it is immaterial that they may not be within the defendant's immediate physical custody, or, indeed, that they may be physically in the hands of third persons—"possession" as used in this statute includes both actual and constructive possession. The power to con-

trol an object may be shared with others, and hence "possession" for the purposes of Section 174 need not be exclusive, but may be joint.[3] Moreover, like other facts relevant to guilt, "possession," actual or constructive, may be proven by circumstantial evidence. We have not hesitated to uphold convictions under Section 174 wherever either actual or constructive possession by the defendant could be honestly, fairly and conscientiously inferred.[4] This interpretation of the statute, equating the term "possession" with dominion and control, and permitting proof of dominion and control by circumstantial evidence, has been adopted in other circuits as well.[5]

We believe that the construction which we have given to the term "possession" in Section 174 is supported by the language, the structure, and the purpose of the statute.

2. Speaking for the court in Rodella, Judge Barnes stated (286 F.2d at 311):
   "Possession means having something in one's power. * * * Actual possession exists when the thing is in the immediate possession or control of the party. * * * Constructive possession is that which exists without actual personal occupation of land or without actual personal present dominion over a chattel, but with an intent and capability to maintain control and dominion." (citations omitted)
   And, in summary (286 F.2d at 312):
   "We reassert the rule that possession may be either actual or constructive, and that proof of dominion and control over narcotics sufficient to establish possession thereof may be by use of either circumstantial or direct evidence."

3. And see Eason v. United States, 281 F.2d 818 (9th Cir. 1960); Gallegos v. United States, 237 F.2d 694, 697–698 (10th Cir. 1956).

4. Compare Williams v. United States, 290 F.2d 451, 453 (9th Cir. 1961). As our brothers of the Third Circuit put it, this court has gone "as far as reason and fairness permit in inferring dominion and control." United States v. Mills, 293 F.2d 609, 611 (3d Cir. 1961).
   The government argues that under our prior decisions the evidence in the present case was sufficient to support a finding of unexplained constructive possession, and hence of guilt—particularly under

our ruling in Cellino v. United States, 276 F.2d 941 (9th Cir. 1960), in which evidence that defendant was a moving party in the negotiations for sale, and had demonstrated his ability to cause the drug to be produced, was held sufficient circumstantial proof that defendant had control, and hence possession, of the narcotic drugs. While the description of the evidence contained in the briefs of the parties may lend some plausibility to the government's argument, the short answer is that the trial judge, sitting as the trier of fact, expressly found that "no constructive possession of said narcotic drug by the defendant," personally, had been proved, because "no such power to control the said narcotic drug by defendant," personally, had been proved.

5. The decisions of other circuits are also collected in Rodella. Decisions subsequent to Rodella, both in this circuit and others, which support the conclusions reaffirmed in that case, include United States v. Ladson, 294 F.2d 535 (2d Cir. 1961); Teasley v. United States, 292 F.2d 460, 466–467 (9th Cir. 1961); United States v. Santore, 290 F.2d 51, 60–61 (panel), 76 (en banc) (2d Cir. 1960); United States v. Hernandez, 290 F.2d 86, 90 (2d Cir. 1960). Compare United States v. Monica, 295 F.2d 400 (2d Cir. 1961); United States v. Mills, 293 F.2d 609, 611 (3d Cir. 1961); United States v. Buonanno, 290 F.2d 585, 587 (2d Cir. 1961).

Control over property may be exercised either by personal physical dominion or through agents, and "it is well recognized both in civil and criminal law that the word 'possession' may encompass both types of control." United States v. Santore, 290 F.2d 51, 60 (2d Cir. 1960).[6] Giving the term "possession" in Section 174 this recognized legal meaning extends criminal responsibility to all those who possess power over the narcotic drugs, and thus avoids freeing the principal who does not have manual possession while punishing the agent who does.[7] It effectuates, in a rational way, the clear congressional purpose to deal sternly with those who engage in an evil traffic.[8]

In most prosecutions under Section 174 in which the statutory presumption arising from "possession" is relied upon, if not in all, the element of the offense sought to be established by the presumption is the illegal importation of the narcotic drugs and the defendant's knowledge that the drugs were illegally imported. Direct or circumstantial proof of the other elements of the offense is almost invariably available.[9] Thus the function of "possession" in the statutory scheme is to shift to the defendant the burden of identifying the legitimate source of the narcotic drugs, if, indeed, they were not illegally imported. This statutory rule of evidence [10] rests upon (1) the rational relationship between "possession" of narcotic drugs by the defendant and knowledge on his part that a substance which is normally imported and rarely imported legally,[11] was in fact

6. See also the authorities cited by Judge Waterman in Santore, 290 F.2d at 60. And see Rodella v. United States, 286 F.2d 306, 311–312 (9th Cir. 1960), cert. denied 365 U.S. 889, 81 S.Ct. 1042, and authorities there cited.

7. Seeking also to interpret the statute in a manner which will impose its heavy penalties upon those whose relationship to the illicit traffic is a meaningful one, the Second Circuit has held that the term "possession" in Section 174 refers only to that type of control from which it reasonably may be inferred that the possessor will commit one of the acts prohibited by Section 174, and does not extend to mere momentary manual grasping of the narcotic drugs. United States v. Santore, 290 F.2d 51, 64 (panel), 79 (en banc), 82 (Friendly, J.), 83 (Smith, J.) (2d Cir. 1960).

8. Harris v. United States, 359 U.S. 19, 22, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); Gore v. United States, 357 U.S. 386, 392, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). See also Manning v. United States, 274 F.2d 926, 930 (5th Cir. 1960).

9. There is no legal obstacle to inferring the requisite intent as well from circumstantial evidence. Compare Caudillo v. United States, 253 F.2d 513, 517 (9th Cir. 1958), cert. denied 357 U.S. 931, 79 S.Ct. 1375, 2 L.Ed.2d 1373. Three potential difficulties have been suggested where evidence connecting the defendants with the actual importation is lacking: (1) Legal importation is possible, though in the case of heroin the possibility is extremely remote (see note 11); (2) Some, if not all, narcotic drugs can be grown or synthesized in the United States; (3) The usual elaborate efforts by defendants to conceal their activities may be explained as motivated by a desire to avoid apprehension for violation of state laws which prohibit dealing in narcotic drugs, irrespective of source. Compare Ingram v. United States, 360 U.S. 672, 678–679, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959). We have no occasion to consider how substantial these obstacles may be in reality, since the government apparently made no effort to prove defendant's knowledge of illegal importation by circumstantial evidence, and the trial court found that "no * * * knowledge of any such importation by defendant * * * has been proved."

10. Section 174 makes "possession * * * prima facie evidence of guilt." Yee Hem v. United States, 268 U.S. 178, 185, 45 S.Ct. 470, 472, 69 L.Ed. 904 (1925). See also Rodella v. United States, 286 F.2d 306, 311 (9th Cir. 1960), cert. denied 365 U.S. 889, 81 S.Ct. 1042, and cases cited; and Velasquez v. United States, 244 F.2d 416, 418 (10th Cir. 1957).

11. The Act of May 26, 1922, 42 Stat. 596, § 2(b) made it "unlawful to import or bring any narcotic drug into the United States," excepting only crude opium and coca leaves "to provide for medical and

imported contrary to law, plus, (2) as a corollary, the consideration that the "possessor" of the narcotic drugs has so much more convenient access to the facts as to their source that it is not unreasonable to require him to come forward with an explanation.[12] Clearly, both rational relationship and relative convenience support an interpretation of "possession" which extends the presumption to all who have dominion and control over particular narcotic drugs.

### III

We are convinced, on the other hand, that an interpretation of the term "possession" in Section 174, which would include the possession of a third person, not on trial, with whom defendant has entered into a common scheme or plan or whom he has aided or abetted, but whose possession of narcotic drugs he has neither shared nor controlled, would be inconsistent with the language, the structure, and the purposes of the statute.

In most prosecutions under Section 174, conviction rests ultimately upon proof that defendant had "possession" of the narcotic drug. The term must be defined with precision and restraint for in effect we are defining the basis upon which punishment will be imposed.[13] It is well to be reminded, too, that the

term "possession" is a highly ambiguous one in the law, and hence "so fraught with danger that the courts must scrutinize its use with all diligence   *   *." Guevara v. United States, 242 F.2d 745, 747 (5th Cir. 1957).

But even the most generous definition of the term "possession," as such, would not justify the construction of the statute urged by the government. As we have seen, a definition of "possession" in terms of dominion and control is amply supported by authority; constructive possession is as much a form of legal possession as is physical custody. But "possession" of a third person "imputed" to the defendant is not, in legal terminology, "possession" of the person to whom it is attributed at all. It is instead the physical or constructive possession of another, for which the defendant is to be made liable. Thus the use of the phrase "imputed possession" begs the question at issue, which is precisely whether the defendant is to be made liable for the possession of the third person in the circumstances of this case.

There is no support in the general law of agency for holding the defendant responsible for the possession of the heroin by Correa when the court has found that the defendant had no control over the heroin. The acts and knowledge of an

legitimate uses only." With respect to the particular narcotic drug involved in the present case, Congress in 1924 added to what is now 21 U.S.C. § 173, 21 U.S.C.A. § 173 the language "but no crude opium may be imported or brought in for the purpose of manufacturing heroin." Act of June 7, 1924, 43 Stat. 657. Heroin has no acceptable medicinal uses whatsoever, (H.R.Rep. No. 2388, 84th Cong., 2d Sess., 2 U.S.Code, Cong. & Ad.News 1956, at 3293), and in 1956 all heroin then lawfully outstanding was required to be surrendered. Act of July 18, 1956, 70 Stat. at page 572. (18 U.S.C. § 1402). However, it cannot be said that all heroin now outstanding in this country is in fact illegally imported since Congress in 1960 enacted a statute providing: "Notwithstanding the provisions of   *   *   *   any other law, the Secretary [of the Treasury]   *   *   * may in his discretion authorize the im-

portation of any narcotic drug   *   *   * for delivery to officials of the United Nations, of the Government of the United States, or of any of the several States, or to any person licensed or qualified to be licensed under section 8 of this Act, for scientific purposes only." Act of April 22, 1960, § 16, 74 Stat. at page 67 (21 U.S.C. § 513, 21 U.S.C.A. § 513). See S.Rep. No. 1077, 86th Cong., 2d Sess., 2 U.S.Cong. & Ad.News 1960, at page 1887.

12. Yee Hem v. United States, 268 U.S. 178, 184–185, 45 S.Ct. 470 (1925). And see Tot v. United States, 319 U.S. 463, 467–469, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); Manning v. United States, 274 F.2d 926, 929–931 (5th Cir. 1960); Note, 56 Harv.L.Rev. 1324 (1943).

13. Compare Jackson v. United States, 102 U.S.App.D.C. 109, 250 F.2d 772, 773 (1957).

agent may be "imputed" to the principal, but this does not mean that the process may be reversed to impose liability upon the agent for the acts and knowledge of the principal. Vicarious liability follows from the principal's power to control. The acts of partners may be imputed to each other because each shares control in the joint enterprise. To "impute" the negligence of one joint venturer to another "it is essential that each have control of the means employed to carry out the common purpose." Troietto v. G. H. Hammond Co., 110 F.2d 135, 137 (6th Cir. 1940).[14]

It is apparent that the trial court intended to base the liability of defendant for the possession of Correa upon the special rules of criminal responsibility drawn from the law of conspiracy. Defendant and Correa are found to have joined in "a common scheme or plan to sell" heroin, and the "actual possession by * * * Correa of said narcotic drug is imputed to defendant * * * because of the common scheme or plan" thus found.[15]

Section 174 itself expressly prohibits a conspiracy to commit any of the substantive offenses defined by the section and, as we have noted, defendant and Correa were charged with such a conspiracy in Count 1 of the indictment. Since each of the substantive offenses

under Section 174 requires proof of specific knowledge by the defendant that the heroin was illegally imported, the same specific knowledge is also an essential element of a conspiracy to commit these substantive offenses.[16] As we have seen, the trial court found that there was no proof that the defendant personally had knowledge that the heroin was illegally imported and no proof that defendant personally had possession of the narcotics from which such knowledge could be presumed. Clearly, the defendant could not be found to have the knowledge necessary to make him a part of the conspiracy to violate Section 174 on the basis of a presumption from possession by Correa, which possession, in turn, would be imputed to the defendant because he had entered into a conspiracy with Correa to violate Section 174. Obviously such an argument would be circular. The defendant was therefore found not guilty of conspiring to violate Section 174. The court nonetheless found that the defendant had participated with Correa in a conspiracy to sell narcotics (though not with the knowledge of illegal importation required of a conspiracy in violation of Section 174), and imputed Correa's possession to defendant on the basis of his participation in that conspiracy. The court held that the possession thus imputed was sufficient foundation for the presumption that defendant

---

14. See also Thompson v. Bell, 129 F.2d 211, 215 (6th Cir. 1942). If the trial court had found that defendant shared control over the heroin, the defendant then would have had constructive "possession" of the heroin and the statutory presumption would have been brought into play under the decisions earlier referred to.

15. A conspiracy is a common scheme or plan plus an intent to accomplish an unlawful purpose (Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942)) or use unlawful means. Pettibone v. United States, 148 U.S. 197, 203, 13 S.Ct. 542, 37 L.Ed. 419 (1893).

16. "[C]onspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense it-

self." Ingram v. United States, 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959), quoting with approval from Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920 at 939. See also United States v. Bufalino, 285 F.2d 408, 416 (2d Cir. 1960) ("Evidence of the same intent or knowledge would be required to convict conspirators or to convict those charged with the substantive offense"); United States v. Ausmeier, 152 F.2d 349, 356 (2d Cir. 1945); Fulbright v. United States, 91 F.2d 210, 211 (8th Cir. 1937) ("Thus knowledge * * * is made an essential element of the substantive crime; and it must adhere in a charge of conspiracy to commit that crime"). Compare Pine v. United States, 135 F.2d 353, 357 (5th Cir. 1943), cert. denied 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 439.

had the knowledge of illegal importation required to support his conviction of the substantive offenses defined in Section 174. The difficulties with this reasoning seem equally obvious.

It would be anomalous indeed if proof of a common scheme or plan, admittedly insufficient to constitute a conspiracy violative of Section 174 because proof of the requisite specific knowledge was lacking, could nonetheless provide the basis for imputing the same specific knowledge for the purposes of conviction of the substantive offenses under the same statute.[17] The soundness of a construction which assumes that Congress intended such a result is at least highly suspect.

The conspiracy to sell heroin to which the trial court found the defendant and Correa parties was a violation of state law.[18] The only additional element required to make out a conspiracy violative of 21 U.S.C. § 174, 21 U.S.C.A. § 174 was knowledge that the drugs were illegally imported. This was the element essential to federal jurisdiction. If it could be supplied by proof of actual or constructive possession by any one party to the conspiracy prohibited by state law—proof which would be available in virtually all cases—then the purported limitation upon federal jurisdiction would have no real substance, and the state law no real function. The state-prohibited conspiracy would serve as a virtually automatic means of imputing, as a matter of law, the missing basis for federal jurisdiction. At a minimum, we should be slow to read the statute as permitting so tenuous a substitute for proof of that element of the federal offense which provides its constitutional basis.[19]

■■ A construction of Section 174 which would permit a presumption of defendant's guilt to be based not only upon his own actual or constructive possession but also upon the possession of a coconspirator, would involve no small extension of the statute's coverage. Under the general law of conspiracy, the common course of conduct between defendant and the third person need not be based upon express agreement—tacit understanding is enough.[20] Neither the existence of the common scheme nor the fact of defendant's participation in it need be proved by direct evidence; both may be inferred from a "development and collocation of circumstances." Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457 (1942).[21] Once the existence of the common scheme is established, very little is required to show that de-

17. A defendant may be guilty of a substantive offense in which he did not participate directly if the substantive crime was committed in furtherance of an unlawful conspiracy to which the defendant was a party, but this is true only if "the criminal intent to do the act is established by the formation of the conspiracy. * * * The unlawful agreement contemplated precisely what was done. It was formed for the purpose." Pinkerton v. United States, 328 U.S. 640, 645-647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946). The rule does not apply where, as in our case, it is expressly found that the defendant was not guilty of conspiring with the intent required for the substantive offenses. Of course, where possession itself is a substantive offense, one who joins in a conspiracy to possess may be guilty of the substantive offense, and the possession of one conspirator may be said to be the possession of the others. Johnson v. United States, 45 F.2d 742, 743 (9th Cir. 1930).

But in such a case the criminal intent is not presumed; it must be established directly in proving the conspiracy.

18. People v. Roberts, 40 Cal.2d 483, 254 P.2d 501 (1953); Cal.Pen.Code, § 182 (1), (5); Cal.Health & Safety Code, § 11501.

19. Compare Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), involving the Harrison Narcotics Act, 38 Stat. 785, 26 U.S.C. § 2550 et seq.: "The statute is not aimed at sales of the forbidden drugs *qua* sales, a matter entirely beyond the authority of Congress * * *."

20. United States v. Paramount Pictures, Inc., 334 U.S. 131, 142, 68 S.Ct. 915, 92 L.Ed. 1260 (1948).

21. See also Delli Paoli v. United States, 352 U.S. 232, 236, note 4, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957) and cases cited; Daily v. United States, 282 F.2d 818, 820 (9th Cir. 1960).

fendant became a party—"slight evidence may be sufficient to connect a defendant with it." Nye & Nissen v. United States, 168 F.2d 846, 852 (9th Cir. 1948), affirmed 336 U.S. 613, 69 S. Ct. 766, 93 L.Ed. 919.[22] Once it is found that the defendant was connected with the conspiracy, he is equally liable with those who originated and dominated the common scheme, though he joined it after its inception and his part was minor and subordinate.[23] He is responsible not only for the acts of the conspirators in furtherance of the conspiracy following his joinder, but also for those that precede it.[24] Moreover, he is liable for the acts of his co-conspirators though he was not aware of the performance of those acts, nor even of the existence of the actors.[25]

In the light of these general principles of conspiracy law, a construction basing the statutory presumption upon the possession of a co-conspirator would sweep within the presumption situations in which the rational connection between defendant's "possession" and the probability that defendant had knowledge of the source of the drugs, would be remote, and the burden of explanation imposed upon the defendant would be difficult if not impossible to discharge.[26] Thus "possession" within Section 174 would include possession of which defendant had no knowledge and over which he had no control, by third persons of whose existence defendant was unaware and who (as in the present case) were not present at trial to testify to the possibly legitimate source of the narcotic drugs, perhaps known only to them.

Engrafting the doctrines of vicarious liability taken from the general law of conspiracy upon the presumption of guilt in this highly penal statute would extend the statutory presumption over so wide and uncertain an area of conduct, and with such severe consequences to the actors, that it is a step not to be taken by a court without clear congressional direction.[27]

22. It is sufficient if the defendant, knowing of the conspiracy, "cooperated to further it." United States v. New York Great Atlantic & Pacific Tea Co., 173 F.2d 79, 90 (7th Cir. 1949). Compare Chavez v. United States, 275 F.2d 813, 817 (9th Cir. 1960).

23. Mendelson v. United States, 61 App. D.C. 127, 58 F.2d 532, 535 (1932). See also United States v. Pelley, 132 F.2d 170, 181 (7th Cir. 1942), cert. denied 318 U.S. 764, 63 S.Ct. 665, 87 L.Ed. 1135.

24. United States v. Lester, 282 F.2d 750, 753 (3d Cir. 1960), cert. denied 364 U.S. 937, 81 S.Ct. 385, 5 L.Ed.2d 368; Coates v. United States, 59 F.2d 173, 174 (9th Cir. 1932).

25. See Blumenthal v. United States, 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947); Marino v. United States, 91 F.2d 691, 696 (9th Cir. 1937), cert. denied Gullo v. United States, 302 U.S. 764, 58 S.Ct. 410, 82 L.Ed. 593. To this point and generally to the problem discussed see Note, 62 Harv.L.Rev. 276 (1948).

26. As the defendant points out, the language of Section 174 itself ("whenever on trial" the defendant is shown to have had possession of the narcotic drugs, he may be convicted unless he "explains the possession to the satisfaction of the jury") suggests that "possession" is to be read as meaning such a relationship between the defendant who is on trial and the narcotic drugs that it might be reasonably supposed that he would know their source and would thus be able to come forward with the explanation of legitimate importation if it existed.

27. We have found no case clearly holding that possession by a co-conspirator alone is enough to constitute "possession" of the defendant under Section 174. The en banc holding of the Second Circuit in United States v. Santore, 290 F.2d at 74, did not extend to this issue. A panel of that court subsequently held that actual or constructive possession must be shown as to each conspirator. United States v. Hernandez, 290 F.2d 86 (2d Cir. 1961). In United States v. Monica, 295 F.2d 400 (2d Cir. 1961), two judges were apparently of the contrary view but the author of the opinion found sufficient circumstantial evidence that the defendant had possession "in the physical sense" (295 F.2d at 402). The instruction in Poliafico v. United States,

## IV

Much of what we have said is equally applicable to the government's suggestion that the judgment may be supported on the theory that the defendant aided and abetted the fugitive Correa in the commission of the crime.[28] We see no substantial reason why 18 U.S.C. § 2 (providing that one who aids and abets is punishable as a principal) should not be applicable to those who aid and abet violations of 21 U.S.C. § 174, 21 U.S.C.A. § 174.[29] We do not agree, however, that this relieves the government of the necessity of proving the specific knowledge and intent of the aider and abettor. The aider and abettor is made punishable as a principal, not as an offender in some special category, and the proof must encompass the same elements as would be required to convict any other principal: "[T]o find one guilty as a principal on the ground that he was an aider and abettor, it must be proven that he shared in the criminal intent of the principal * * *." Johnson v. United States, 195 F.2d 673 (8th Cir. 1952).[30] Again, to argue that the proof of the intent necessary to make defendant an aider and abettor may be supplied by attributing possession of narcotic drugs to the defendant on the ground that he *is* an aider and abettor of a principal who is shown to have actual or constructive possession, is to assume the premise which one purports to prove.

There are two additional reasons for holding that knowledge or possession (actual or constructive) must be shown as to an aider and abettor. The desirability of maintaining a reasonably harmonious relationship between 18 U.S.C. § 2 and 21 U.S.C. § 174, 21 U.S.C.A. § 174 argues against a construction which would require a showing of possession in one who "facilitates" a violation of Section 174, but not in one who "aids and abets" a violation of that statute.[31] Further, conviction as an aider and abettor

237 F.2d 97, 116 (6th Cir. 1956), cert. denied 352 U.S. 1025, 77 S.Ct. 590, 1 L. Ed.2d 597, was sustained on the ground that if the defendants were found guilty of a conspiracy to violate Section 174, they would be liable for the substantive violations of their co-conspirators in furtherance of the conspiracy. See Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180 (1946). The instruction in Gallegos v. United States, 237 F.2d 694, 697–698 (10th Cir. 1956), was upheld as presenting only the theory that joint possession by all of the defendants could be proved by circumstantial evidence.

28. In a proper case a defendant might be found guilty of aiding and abetting though he was not guilty of conspiring, since the latter requires proof of agreement. Bacon v. United States, 127 F.2d 985, 987 (10th Cir. 1942); Marino v. United States, 91 F.2d 691, 696 (9th Cir. 1937), cert. denied Gullo v. United States, 302 U.S. 764, 58 S.Ct. 410. See also Nye & Nissen v. United States, 336 U.S. 613, 620, 69 S.Ct. 766 (1949).

29. It has been commonly assumed that 18 U.S.C. § 2 applies to prosecutions under 21 U.S.C. § 174, 21 U.S.C.A. § 174. See United States v. Senior, 274 F.2d 613, 617 (7th Cir. 1960); United States v. Malfi, 264 F.2d 147, 151 (3d Cir. 1959), cert. denied 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63. Compare United States v. Santore, 290 F.2d 51, 77–78 and 79–80 (2d Cir. 1960).

30. See also Logsdon v. United States, 253 F.2d 12, 15 (6th Cir. 1958). And see McCoy v. United States, 169 F.2d 776, 783–784 (9th Cir. 1948), cert. denied 335 U.S. 898, 69 S.Ct. 298, 93 L.Ed. 433. In Cellino v. United States, 276 F.2d 941, 944–945 (9th Cir. 1960), this court discussed the question here decided and reviewed the then available authorities, but found it unnecessary to resolve the issue. The Second Circuit, sitting en banc, later held that 18 U.S.C. § 2 was applicable to 21 U.S.C. § 174, 21 U.S.C.A. § 174, but divided three to three as to whether knowledge, or actual or constructive possession, must be shown as to the aider and abettor. United States v. Santore, 290 F.2d 51, 74 (2d Cir. 1960) (a seventh judge of the circuit, Judge Hincks, has since announced his adherence to the view which we take here. United States v. Buonanno, 290 F.2d 585, 587 (2d Cir. 1961)).

31. Compare United States v. Santore, 290 F.2d 51, 77–78 (majority) with 79–80 (dissenting opinion) (2d Cir. 1960).

requires proof that the crime has in fact been committed by the principal.[32] As defendant argues, it is questionable whether the fugitive Correa's possession of narcotic drugs raises a presumption of his guilt sufficient for the purposes of this rule when Correa was not in fact present to explain his possession. Possession by Correa was proven, but the statute does not make possession an offense.[33] It permits an inference of guilt if the possession is not explained to the satisfaction of the jury. Since the absent principal might have an explanation of either legal importation or a non-foreign source which would satisfy the jury, the aider and abettor of the absent principal might be convicted by presumption though no federal offense had in fact been committed.

\*   \*   \*   \*   \*   \*

The present holding does not concern those whose knowledge of the illegal importation of the narcotic drugs can be shown by direct or circumstantial evidence, without reliance upon the presumption based upon possession. It does not in any event concern the moving parties in a scheme to traffic in narcotic drugs, for as to them possession may be shown through proof of control. It does not concern the "runners," who play the minor but vital role of effecting delivery, for as to them the proof will show possession by physical custody. The rule which we announce relates only to that defendant who is not shown, directly or by circumstantial proof, to have had knowledge of the source of the narcotic drugs, or to have had their physical custody, and whose role in the scheme, if any, is so minor as not to support an inference that he shared in the control of the narcotic drugs. Our holding is that such a defendant is not within the reach of the presumption created by Section 174.

Reversed.

32. Gray v. United States, 104 U.S.App. D.C. 153, 260 F.2d 483 (1958); United States v. Tornabene, 222 F.2d 875, 878 (3d Cir. 1955).

33. Cellino v. United States, 276 F.2d 941, 943 (9th Cir. 1960); United States v. Brown, 207 F.2d 310, 312 (7th Cir. 1953); United States v. Landry, 257 F.2d 425, 431 (7th Cir. 1958).