Robert G. **PEOPLES**, Petitioner-Appellant,

v.

Carl **HOCKER**, Warden, Nevada State Prison, Respondent-Appellee.

No. 23208.

United States Court of Appeals, Ninth Circuit.

March 4, 1970.

Hubert R. Sommers (appeared), Los Angeles, Cal., for appellant.

Peter Breer (appeared), Asst. Atty. Gen., State of Nevada, Harvey Dickerson, Atty. Gen., State of Nevada, Carson City, Nev., for appellee.

Before HAMLEY, DUNIWAY and CARTER, Circuit Judges.

DUNIWAY, Circuit Judge:

The appellant, Robert Peoples, was found guilty of murder in the first degree by a Nevada state jury and was sentenced to life imprisonment without the possibility of parole on May 12, 1966. On February 28, 1967 the Nevada Supreme Court affirmed that conviction, Peoples v. State, 83 Nev. 115, 423 P.2d 883. On October 9, 1967 the United States Supreme Court denied certiorari

(389 U.S. 866, 88 S.Ct. 132, 19 L.Ed.2d 138). On August 8, 1968 Peoples petitioned the United States District Court for the District of Nevada for a writ of habeas corpus. The petition was denied [1] and Peoples appeals. We affirm.

At the hearing below, it was agreed that he relied entirely upon the record of his conviction used in his appeal to the Supreme Court of Nevada. These are the basic facts disclosed by that record: On June 10, 1965 Peoples arrived in Beatty, Nevada and was met by one Dillard R. Morton and the two children of Sharon Wilson, the decedent. Peoples was driven to the El Portal Motel where he left his luggage in the room occupied by Sharon Wilson. Peoples, Morton and the children then drove to the Oasis Bar where Sharon was employed. While Peoples was talking with her in the bar a pistol which he was carrying was discharged through his pocket and the bullet struck the floor near Sharon. Peoples then ushered the girl and her two children into Morton's car and they returned to the motel. In the bar, Peoples was overheard threatening Sharon by saying that he was going to kill her. At the motel, Peoples, Morton and Sharon were alone in a room. A shot was fired which passed through Sharon's shoulder, crossed her chest cavity piercing her heart, and came out on the right side of her body. Peoples and Morton carried her out to Morton's car where she was wedged between the front and back seats of the car. Her two children were put in the front seat and the car was driven back to the Oasis Bar. As it arrived behind the Oasis the occupants were approached by a deputy sheriff who was investigating the shot that had been fired inside the bar. When the deputy had questioned Peoples and Morton about the earlier shot, he looked inside the car and saw the woman in the back and an automatic pistol on the front floor. The children were still seated in the front seat.

1. Judge Thompson (the district judge) recommended that Peoples' sentence be reviewed by the Nevada Board of Pardons.

The board did make such a review and refused to alter Peoples' sentence.

Peoples and Morton were both charged with first degree murder. They contended that Sharon had committed suicide and that they had put her in the car with the intent of securing medical attention. However they drove toward the bar and away from the local medical center. The prosecution argued that Peoples, who had threatened Sharon's life on previous occasions, had killed her. Peoples was convicted.

In this appeal Peoples alleges twelve separate errors in his trial.

### 1. *Failure to produce the autopsy report.*

 At the preliminary hearing Peoples' attorney questioned Dr. Frederick Joy, the county physician and health officer, about the existence of an autopsy report. When Dr. Joy stated that there was such a report, the following discussion took place:

> "Mr. Posin (Peoples' counsel): If your Honor please, at this time, we respectfully request, prior to the excusing of Dr. Joy, the Court direct that Dr. Joy submit to the District Attorney's office of Nye County, or to the Court Reporter of this honorable Court, the original or a true copy of the report which Dr. Joy caused to be reduced to writing and is presently in his files. This can be done through the mail and made a part of the permanent record of these proceedings.
> \* \* \*
> Mr. Beko (prosecution): I would stipulate I have no objection.
> The Court: Do you understand?
> Dr. Joy: Yes."

No report was ever sent. Peoples now argues that the state was ordered to provide a copy of the report. The state was not *ordered* to do anything. During trial, Peoples never asked that a copy of the autopsy report be produced. In fact when Dr. Joy testified at the trial, Peoples made no mention of the autopsy report, although it had been discussed on direct examination. Under these circumstances there was no unconstitutional suppression of evidence on the part of the district attorney. We have no reason to doubt that if the report had been asked for at the trial, it would have been produced.

### 2. *Failure to provide copies of x-ray photographs.*

 Peoples contends that the prosecution's failure to provide him with copies of x-ray photographs which showed a crack in one of the victim's vertebrae denied him of due process. During the trial Dr. Joy testified as to the contents of the x-rays and then stated in response to questions that the x-rays themselves had either been lost or misplaced. There was no objection made by Peoples. There was no contention that the crack in the vertebrae had anything to do with the decedent's death. Nothing in this incident violated Peoples' constitutional rights.

### 3. *Failure to give a limiting instruction as to Ronald Preston's testimony.*

 Ronald Preston, a cousin of the deceased, was allowed to testify concerning prior threats made by Peoples against the decedent's life. This testimony was admitted to show intent, motive, and state of mind of the accused. Peoples now argues that it was error for the trial judge not to include in his instructions to the jury one limiting the use which they could make of Preston's testimony. Peoples did not submit an instruction to the court, but argues that in any case the trial court should have given one on its own initiative. In Nevada, one cannot object to the court's failure to give an unrequested instruction, Mears v. State, 1967, 83 Nev. 3, 422 P.2d 230. The rule is similar in the federal courts. Rule 30 F.R.Crim.P. Its application to this situation raises no constitutional issue.

### 4. *Self-incrimination.*

 Peoples objects to the admission of statements he made to Deputy Sheriff Robert H. Mullins while the deputy was

questioning him in regard to the shot that was fired inside the Oasis Bar. The complained of segment of the transcript reads:

"Q. Now Mr. Mullins, will you tell the court and jury what you did or what happened after you stopped at this automobile?

A. I got out of our automobile and Mr. Peoples was possibly six feet from the car on the right hand side. Mr. Morton had made his circle practically in front of the car and they both met me at the same spot. In fact, they were there when I approached and said: 'Which one of you guys did the shooting in the bar'?

\* \* \* \* \* \*

Q. Relate to the best of your recollection what you said to the defendant and what the defendant said to you and what Mr. Morton said to either one of you in the presence of Mr. Peoples.

A. All I can remember is they said: 'I don't know anything about the shooting.'

Q. And did you inquire about a gun?

A. I inquired about the gun and they said: 'I don't know anything about a gun.'

Q. And then what did you do?

A. I said: 'Let's go into the bar and we will find out.' "

Peoples was not warned of his right to be silent nor of his right to an attorney. The instant case was decided in May of 1966, before the decision in Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Thus Deputy Mullins was not required to give the extensive warnings required by *Miranda*. The governing case is Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. The conduct complained of here does not violate the standards of *Escobedo*. Peoples was not in custody in the *Escobedo* sense. In fact, at the time Mullins did not even know that there had been a death or that Sharon was in the nearby automobile.

5. *Inadequate police procedure as a denial of due process.*

■ Peoples contends that because he claimed that Sharon had committed suicide the police should have conducted fingerprint tests, paraffin tests and other ballistic tests to determine whether or not she had shot herself. He claims that failure to conduct these tests was a denial of due process. Peoples is unable to cite any authority to support his position. It would be an exceedingly delicate task to endeavor to establish criteria to tell when a certain quantum of police investigation constitutes due process and when it does not.

There is nothing in the record to indicate that the tests were not made. Moreover, assuming that there were no such tests, as seems probable, there is no evidence that the failure to act was caused by pressure or even urging from the prosecution. We agree with the District Judge that better investigation would have been helpful to the jury. But we also agree with him that the investigation was not so poor as to amount to a deprivation of due process, much less a suppression of evidence such as there was in Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215.

6. *The attempt to introduce a switchblade knife in evidence.*

■ Peoples contends that he was denied due process because the jury was allowed to see a switchblade knife that he had in his possession when he was arrested. The district attorney attempted to introduce the knife into evidence. He apparently opened the knife while attempting to have it accepted. Peoples objected and the knife was not admitted. The judge ordered the knife removed

from the presence of the jury. The incident was not of constitutional dimension. On the contrary, we agree with the Nevada Supreme Court that even had the knife been admitted, that would have been harmless error. (Peoples v. State, *supra*, 423 P.2d at 884.)

### 7. *Misstatements of the prosecutor.*

██ Peoples alleges he was denied due process because the district attorney made various misstatements during the prosecution's argument to the jury. The only such misstatement to which Peoples objected during the trial was a reference to Debbie Beach, daughter of Sharon, listening outside the motel door just before her mother was shot. It is clear from the transcript that this misunderstanding was resolved to the satisfaction of all the parties. Peoples failed to object to the other alleged misstatements of the prosecutor in the trial court. United States v. Elliot, 9 Cir., 1969, 418 F.2d 219; Singer v. United States, 9 Cir., 1964, 326 F.2d 132, aff'd, 1965, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630.

### 8. *The prosecutor's relationship to the jurors.*

██ Peoples contends that all or nearly all of the jurors were either friends, or had business dealings with, the district attorney and, as a result, he was unable to get a fair trial. The argument is not available here. Peoples at no time unsuccessfully challenged a prospective juror for cause on the grounds that he was intimate with or acquainted with the district attorney. Furthermore, Peoples made no attempt to obtain a change of venue to find territory where the prosecutor was not so well known.

### 9 and 10. *Improper supervision of the jury and pre-trial publicity.*

██ Peoples alleges that there was improper supervision of the jurors in that they were allowed to talk with witnesses. He also argues that pretrial publicity made a fair trial impossible. In the district court Peoples struck the allegation of inflammatory publicity from his petition. He cannot exhume it now. In discussing the allegation that the jury was inadequately supervised, the Nevada Supreme Court said: "The record does not support this assertion.² "

\* \* \* \* \* \*

"2. The assertion rests on affidavits secured from two witnesses after the case was concluded and while this appeal was pending. Those affidavits, attached to appellant's brief, are not properly a part of the record on appeal. We note, however, that they do not contain facts from which prejudice to the right to a fair trial may be presumed." (Peoples v. State, *supra*, 423 P.2d at 885.)

We agree.

### 11. *Speedy trial.*

██ Peoples was arrested on June 10, 1965. The preliminary hearing was conducted 68 days later. An information charging Peoples with first degree murder was filed by the district attorney 153 days after the preliminary hearing. Peoples was arraigned on the information 20 days later. In 1965, Nevada Revised Statute § 178.495 provided:

"If a defendant whose trial has not been postponed upon his application is not brought to trial within 60 days after the finding of the indictment or filing of the information, the court shall order the indictment or information to be dismissed, unless good cause to the contrary is shown." ²

Peoples raised his question about denial of a speedy trial for the first time in

---

2. NRS 178.495 was repealed in 1967 by assembly bill # 81. See Statutes of Nevada Vol. II p. 1472.

his appeal to the Nevada Supreme Court. That court found the law in Nevada was that the right to speedy trial must be claimed at or before trial or it is waived. Peoples v. State, *supra*, 423 P.2d at 885.

 Subsequent to the decision in Peoples v. State, *supra*, the United States Supreme Court held in Klopfer v. North Carolina, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 that the Sixth Amendment right to a speedy trial extends to the states. This decision has been recognized by the Nevada courts in Bates v. State, 1968, 84 Nev. 43, 436 P.2d 27 and Stabile v. Justice's Court, 1967, 83 Nev. 393, 432 P.2d 670. However, a long line of federal authority holds that failure to assert the right before trial will preclude raising the point on appeal. Moser v. United States, 9 Cir., 1967, 381 F.2d 363; United States ex rel. Von Cseh v. Fay, 2 Cir., 1963, 313 F.2d 620; United States v. Lustman, 2 Cir., 1958, 258 F.2d 475; Collins v. United States, 9 Cir., 1946, 157 F.2d 409; Danziger v. United States, 9 Cir., 1947, 161 F.2d 299. We perceive nothing unconstitutional in the Nevada or federal rule, applied to Peoples by the Nevada Supreme Court.

12. *Conglomerate argument.*

 Finally, Peoples argues that even if the individual allegations of error listed above are not sufficient grounds for habeas corpus, the aggregate of all of these less than constitutional errors amounts to a denial of due process. To bolster this argument he cites Estes v. Texas, 1965, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543. We find no support for his contention in that case. The thrust of the opinion in *Estes* is that some conduct is so inherently suspect vis-a-vis obtaining a fair trial that there should be no requirement that a defendant show actual prejudice when his trial is tainted by that conduct. But this is not such a situation. Furthermore, the things of which Peoples complains were not errors at all, let alone errors of constitutional magnitude.

Affirmed.