**UNITED STATES of America,
Appellee,**

**v.**

**Nelson CRESPO, Appellant.**

**No. 456, Docket 33451.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1970.

Decided Feb. 25, 1970.
Certiorari Denied May 18, 1970.
See 90 S.Ct. 1716.

Jon A. Sale, James D. Zirin, Asst. U. S. Attys., Robert M. Morgenthau, U. S. Atty., for appellee.

Marilyn Elaine Meadors, Milton Adler, New York City, for appellant.

Before MEDINA, WATERMAN and SMITH, Circuit Judges.

WATERMAN, Circuit Judge:

This is an appeal from a judgment of conviction, after a three-day jury trial in the United States District Court for the Southern District of New York, for the knowing receipt, concealment, transpor-

tation and sale of illegally imported heroin, in violation of 21 U.S.C. §§ 173, 174, and conspiracy to commit such acts.[1] The defendant, a second narcotics offender, was sentenced to concurrent ten year terms of imprisonment.

The facts follow the usual pattern in narcotics cases—Federal Bureau of Narcotics agent meets informant; informant arranges meeting with narcotics salesmen; agent negotiates buys; narcotics salesmen are arrested. There is no issue as to the sufficiency of the evidence. Appellant on appeal raises two points: (1) the Section 174 inferences, illegal importation of heroin and defendant's knowledge of that fact, are constitutionally impermissible, and (2) the court's instruction to the jury relating to the elements of importation and knowledge was worded in such a way as to render the statutory inferences, if constitutionally valid, conclusive presumptions. We confine our discussion to appellant's latter point inasmuch as the inferences authorized by § 174 with respect to heroin were recently upheld. Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

As part of the Government's case in chief, testimony was offered to establish the fact that a tinfoil package containing approximately 14.80 grams of heroin hydrochloride was found in appellant's pocket at the time of his arrest. Taking the stand in his own defense appellant denied he was in possession of the alleged narcotics at the time of his arrest. Thus, since the jury accepted the Government's version, as evidenced by the verdict, and no evidence was offered to explain defendant's possession of the drug, proof of at least two elements of the crime, the illegally imported character of the heroin and knowledge of such, must rest exclusively upon the statutory inferences.

The statute does not require the jury to convict once possession of the

1. Appellant Crespo was tried jointly with a codefendant, Julio Rivera. Rivera was also convicted but has not appealed. An-

other codefendant, a John Doe, was a fugitive at the time of trial.

narcotic is established, even in a case where the evidence negates any doubt that the defendant lawfully or innocently possessed the drug. See, e. g., United States v. Peeples, 377 F.2d 205, 210–211 (2 Cir. 1967).

> Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed *sufficient evidence to authorize* conviction unless the defendant explains the possession to the satisfaction of the jury. 21 U.S.C. § 174 (emphasis supplied).

■■■ If the defendant or the evidence from other sources [2] "explains the possession to the satisfaction of the jury," [3] it follows that the statutory inferences do not operate. On the other hand, if the defendant or the evidence viewed as a whole does not so "explain," the statute merely permits the jury to view the fact of possession of the narcotic (heroin) as evidence from which to infer the ultimate facts of illegal importation and knowledge. Section 174 does not operate as a displacement of the jury's duty to be convinced beyond a reasonable doubt that the ultimate facts are true before it can convict.

■■■ As pointed out in Turner v. United States, *supra* at 647, the jury may conclude that "* * * heroin is not produced in the United States

and that any heroin possessed here must have originated abroad * * *´ based on its own store of knowledge, * * *." and infer therefrom that the defendant "* * * was equally well informed." Or, being uninformed as to the sources of heroin, the jury may reach the same conclusions "* * * reasoning that the statute represented an official determination [by Congress] that heroin is not a domestic product." The statute, therefore, provides the jury with a fact, a fact judicially noticed by the Court in *Turner*, that heroin is not a domestic product. "To possess heroin *is* to possess imported heroin." *Id.* at 652 (emphasis in original). The jury, as the sole judge of the facts, may, if it chooses, reject this legislative fact-finding, as it may likewise reject any other evidence tending to establish any other fact sought to be proved in a criminal case. Coupled with the fact that the defendant had knowing possession of the heroin, the jury *may* infer that the heroin in question was illegally [4] imported and that the defendant knew as much, for "* * * those who traffic in heroin will inevitably become aware that the produce they deal in is smuggled, unless they practice a studied ignorance to which they are not entitled." Turner v. United States, *supra* at 653.

In a case of this sort, it is important for the trial judge carefully to instruct the jury as to the principles outlined

2. The jury should not be instructed that the defendant himself must "explain the possession." The statute must be construed as if it read "unless * * * [the evidence from any source, viewed as a whole] explains the possession * * *." lest too great a burden be placed on the defendant to testify, and if he chooses not to testify to avoid an impermissible inference from his failure to take the stand. United States v. Armone, 363 F.2d 385 (2 Cir.), cert. denied, Viscardi v. United States, 385 U.S. 957, 87 S.Ct. 391, 17 L. Ed.2d 303 (1966).

3. "Possession to the satisfaction of the jury" means that the jury is satisfied beyond a reasonable doubt that (1) the defendant committed one of the specified

physical acts charged, e. g., he did receive, conceal, buy, sell, or transport the heroin and "possessed" the heroin while so acting; (2) the defendant knew that the substance possessed was heroin; (3) the defendant possessed the heroin unlawfully, i. e., the heroin was imported or clandestinely produced domestically; and (4) the defendant was aware of the heroin's illegal source. See, e. g., United States v. Llanes, 374 F.2d 712, 715 (2 Cir.), cert. denied, 388 U.S. 917, 87 S.Ct. 2132, 18 L.Ed.2d 1358 (1967).

4. It is illegal to import heroin or to manufacture it domestically for any purpose, medical or otherwise. 21 U.S.C. § 173. See Turner v. United States, *supra* at 642 n. 12 and n. 13.

above if the statutory inferences are relied upon to prove the elements to which they relate. Otherwise, a jury may be too easily lulled into a belief that the statutory inferences are conclusively binding upon them unless the defendant successfuly explains his possession by bringing out rebutting evidence.

■■■ We now turn to the charge challenged on this appeal. The trial court instructed the jury with reference to the substantive count:

As to the third and fourth essential elements of the government's proof, ladies and gentlemen, it will doubtless occur to you that the prosecution has not offered any direct evidence to establish illegal importation into this country of the substances referred to in the indictment or any direct evidence of either one of the two defendants' knowledge that these substances were imported or brought into the United States contrary to law. However, another portion of Section 174 of the Code which I read to you a few moments ago comes into play here or may come into play depending on how you assess the facts.

This portion of Section 174 provides in relevant part that if during the course of the trial a defendant is shown to have or to have had possession of the narcotic drug such possession shall be deemed sufficient evidence to authorize conviction unless the evidence explains the possession of that defendant to the satisfaction of the jury. Thus under the law proof of possession of narcotics gives rise to an inference that the narcotics were imported contrary to law and the further inference that the person who had possession of such narcotics knew of such illegal importation into this country.

In short, this means that you would be authorized to convict a defendant if there has not been any legitimate explanation of his possession of the narcotics or if there was an explanation which you disbelieve. In other words, if the government demonstrates be-

yond a reasonable doubt that a given defendant had possession of what is in fact a narcotic drug and there is no satisfactory explanation in the case of this possession, you would be entitled to infer that the narcotic in question was illegally imported and that the defendant shown to have possession thereof knew it was illegally imported.

On the other hand, if you find from the evidence that this inference is not justified, or, to put it in other words, that there is a satisfactory explanation, an innocent explanation, from the evidence, then you would be entitled not to draw this inference which the law provides.

The defense did not except to the above instruction and, therefore, is precluded from prevailing on appeal unless plain error can be shown. Fed.R.Crim. P. 52(b). We conclude that the instruction now urged for the first time on appeal to have been a deficient instruction was *minimally* sufficient to apprise the jury that it was not bound by the statutory inferences even though there had been no satisfactory explanation of the defendant's possession of the drug. Similar instructions, moreover, have been upheld, in the face of timely exceptions, in the past. See, *e. g.*, United States v. Secondino, 347 F.2d 725 (2 Cir.), *cert. denied* sub nom. Massari v. United States, 382 U.S. 931, 86 S.Ct. 322, 15 L.Ed.2d 342 (1965). We wish to say, however, that the above charge could have been improved upon despite the fact that the court told the jury it would be "authorized" to convict and would be "entitled" to infer the elements of illegal importation and defendant's knowledge of illegal importation in the absence of a satisfactory explanation of possession. To avoid any misunderstanding on the jury's part that it is somehow bound by the statutorily prescribed inferences unless they hear countervailing evidence, the wiser practice is to spell out expressly that the jury is not only authorized to infer the elements in question but is authorized also *not* to infer such ele-

ments. It would be well, we think to explain the up-to-date basis supporting the legitimate inferability of one of the statutory elements, that a recent official investigation [5] resulted in an unchallenged determination that all heroin found in the United States has been illegally imported into the country, because heroin is, first, not produced domestically, and, second, it is illegal to import heroin or products from which heroin is derived. The other inferential element, that the defendant had knowledge of illegal importation, should be explained without reference to the statute [6] by instructing the jury that it is reasonable to infer that one who unexplainedly possesses and deals in heroin would probably know of its source or at least would know that it was smuggled into the country from somewhere outside the country. Finally, although thus aided by

official findings, the jury should also be instructed that those findings and the rational inferences arising therefrom and the additional rational inference of the possessor's knowledge arising from the fact of his possession are not binding upon them and are not a substitute for their considered deliberations and duty to acquit the defendant if they are not convinced that every element of the crime charged was proved beyond a reasonable doubt.

We hope that trial judges will give serious thought to the drafting of charges that agree with these principles, principles we have previously explicated and which we are reaffirming in this opinion, and which we believe are now demanded by the opinion of the Supreme Court in Turner v. United States, *supra.*

Affirmed.

---

5. See Turner v. United States, *supra* 90 S.Ct. 642, n. 10 and n. 11, for the official investigations undertaken to determine the sources of heroin.

6. The inference of knowledge of illegal transportation arises once the evidence tends to establish that the defendant had possession of the heroin. Congress by allowing the jury to infer knowledge from the proof of possession did no more than "accord to the evidence, if unexplained, its natural probative force." United States v. Gainey, 380 U.S. 63, 71, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), quoting from McNamara v. Henkel, 226 U.S. 520, 525, 33 S.Ct. 146, 57 L.Ed. 330 (1913). Where it is naturally probative to draw an inference from a proven fact so that it is permissible to give an instruction relative thereto, "the better practice" is to omit "any explicit reference to the statute itself." *Id.* 380 U.S. at 71, 85 S.Ct. at 759 n. 7; Verdugo v. United States, 402 F.2d 599, 605 (9 Cir. 1968); United States v. Armone, *supra* 363 F.2d at 392. However, the inference that arises from the possession of heroin that it was illegally imported heroin arises in a different way. In many heroin cases, no evidence is introduced at trial tending to establish that the particular heroin in issue was illegally imported. In the absence of the statute,

it would be impermissible, as no evidence relative to illegal importation is before the jury, to instruct that it may be inferred that the heroin was illegally imported. Congress, however, has instructed that evidence of illegal importation need not be introduced at trial because, based on legislative investigation, it has conclusively found that if one possesses heroin in this country the heroin he possesses must necessarily be imported heroin. A juror may or may not know where heroin comes from; and, for those jurors who do not know of the origins of heroin, it should be permissible for them to accept or reject the legislative finding that heroin is not a domestic product. Congress, then, has accorded to one's possession this second inference which carries with it by legislative fact-finding "its natural probative force," in lieu of requiring that more than the possession be proved. Consequently, it seems obvious that in submitting the issue of the innocence or guilt of a particular defendant it is the "better practice" when dealing with inferences of this second type that are based on legislative findings to explain that the statute authorizes jurors to adopt or not to adopt as a proven inferential fact what Congress has deemed to be commonly known and understood.