UNITED STATES of America, Plaintiff-Appellee,

v.

L. C. BAGBY, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Carl STRONG, Defendant-Appellant.

Nos. 71-1577, 71-1578.

United States Court of Appeals, Ninth Circuit.

Nov. 15, 1971.

---

John A. Pickard (argued), of Dardano & Mowry, Portland, Or., for defendant-appellant L. C. Bagby.

Terry W. Baker (argued), Portland, Or., for defendant-appellant Carl Strong.

Jack Wong, Asst. U. S. Atty. (argued), Sidney I. Lezak, U. S. Atty., Charles H. Turner, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and BOLDT, District Judge.*

* Honorable George H. Boldt, United States District Judge, Western District of Washington, sitting by designation.

DUNIWAY, Circuit Judge:

Bagby and Strong appeal from judgments of conviction entered upon guilty verdicts under an indictment charging a conspiracy made criminal by 21 U.S.C. § 174. We reverse and remand.

Section 174 proscribes a conspiracy to commit any of the acts that it makes criminal. In this case the charge is that one Brazil, Bagby, Strong, and one Thurman (an unindicted conspirator) conspired "to receive, conceal, buy, sell, and facilitate the transportation and concealment of quantities of unlawfully imported heroin, a narcotic drug, knowing the said heroin to have been imported into the United States contrary to law."

### 1. *The facts.*

Stated most favorably to the government, here is what the record shows:

Brazil, in August of 1969, resided in Phoenix, Arizona. Bagby, Strong and Thurman, resided in Portland, Oregon. Bagby and Thurman lived in adjoining buildings and had at one time lived together. Strong and Thurman were heroin addicts. Bagby was not a user, but he supplied narcotics to both of them. He became acquainted with Brazil during a visit to Phoenix sometime before the events in question. Brazil was also a dealer in narcotics.

Brazil and his wife lived in 5823 West Fairmont, Phoenix. At that address there was a telephone, the number of which was non-published and was in her name on the telephone company records. A non-published number is never given out by the telephone company, even for an emergency. Bagby had in his wallet two pieces of paper bearing Brazil's name, address, and the non-published number. Bagby lived at 38 N.E. Tillamook, Portland. In his apartment there was a telephone listed to one Leatrice Reagor. Strong lived at 536 N.E. Thompson, Portland. At that address there was a telephone listed to Lillie Mae Williams, Strong's mother. Bagby never gave Brazil's Phoenix telephone number to Leatrice Reagor, nor to his brother, who lived in the same building, nor to his lady friend Mary Hoggans, who lived across the street. He testified that he never gave the number to Strong and never called Brazil. Nevertheless, between July 12 and August 18, there were six telephone calls between Bagby's phone and Brazil's phone, and seventeen calls between the Williams phone (where Strong lived) and the Brazil phone, including calls on August 9, 10, 11, and August 17 and 18.

On August 11, Strong sent a telegram to Brazil reading: "Need three bolts. Wire as soon as you can." A money order for $110, payable to Brazil, accompanied the telegram. On August 26, Brazil sent a package by air freight to Portland, addressed to "Willie Dherman." On August 27, Bagby told Thurman that Bagby had had a package of heroin sent from Phoenix to Portland in Thurman's name, and asked Thurman to go to the bus depot with him to pick it up. Thurman's reward was to be two spoons of heroin. They went to the bus depot but found no package. That evening, Bagby, Strong and Thurman had dinner at Mary Hoggans' house. The package, and Brazil, were discussed by Bagby and Strong, and Bagby phoned Brazil and learned that the package had been sent air freight.

Meanwhile, the package arrived at Portland, minus the way bill, which had become detached. An airline agent opened the package, looking for a return address. He found the heroin in 3 plastic packets. The police were called, verified the fact that the packets contained heroin, removed two packets, rewrapped the package, and set up a surveillance. Shortly after, Hoggans, Strong, Thurman, and Bagby arrived in Bagby's car. Hoggans and Strong remained with the car. Thurman and Bagby went to the air freight counter, where Thurman claimed the package. Bagby and Thurman were arrested on their way back to the car; thereafter, Strong and Hoggans were arrested at the car.

## 2. *The court's instruction.*

The trial judge did not inform counsel of his proposed action on counsel's requested instructions before the case was argued, as Rule 30, F.R.Crim.P. requires. Bagby filed no requested instructions; Strong filed several. The judge gave his own instructions, immediately after counsel's arguments. He then gave counsel an opportunity to object, as required by the rule. The discussion began with the following colloquy:

"MR. BAKER [Counsel for Strong]: Your Honor, I take it that these instructions were going to be given whether we had any objections or not?

"THE COURT: Yes, you may make your objections now and they will be part of the record."

This procedure we think to be unfortunate. Had there been a discussion of the instructions before they were given, the errors we find in them might have been avoided.

The court began its instructions by reading the indictment, making it clear that the indictment was merely a charge, and stating the presumption of innocence. He also read the pertinent language of § 174, and stated that heroin is a narcotic drug. Then came the following:

"In 1956, Congress passed a statute which required the surrender of all heroin in the United States to the Secretary of the Treasury within 120 days. All heroin not surrendered was declared to be contraband, and is, by law, now contraband. Therefore, as a matter of law, any heroin found in the United States is contraband and it is unlawful to distribute it for other than scientific research purposes after approval by the Secretary of the Treasury of [sic] his designated representative.

"The defendants have been charged in the indictment with the crime of conspiracy to violate *these statutes* that I have called your attention to. Now, to convict the defendants of this crime, the Government must prove beyond a reasonable doubt:

1. That the conspiracy described in the indictment was formed and was existing at or about the time alleged in the indictment; the Government must also prove:

2. That there was knowledge on the part of the defendants that the heroin referred to in the indictment was illegally imported;

3. That it [sic] must have been an overt act committed in furtherance of the purpose of the conspiracy committed [sic] by one of the conspirators;

4. There must be proof that the defendants knowingly and willfully became members of the conspiracy, with intent to further its objective." (Emphasis added.)

After some discussion of the law of conspiracy, the instructions continue:

"Under the law, if you are satisfied beyond a reasonable doubt that the defendants or any one of them had possession at any time of the heroin as charged in the indictment, you may infer that this heroin was unlawfully imported into the country and that the defendant or defendants in possession knew this fact.

"All heroin found in the United States has been illegally imported into the country because heroin is not produced in this country and it is illegal to import heroin or import the material from which it is manufactured.

"With reference to the question of whether the defendants had knowledge of the illegal importation of the heroin described in the indictment, you may infer as reasonable men and women that one who possesses and deals in heroin would likely be aware of its source or at least would assume that it was smuggled into the country from somewhere outside the country."

This was followed by definitions of actual and constructive possession.

Counsels' objections are confused and not entirely adequate, which is not surprising because they had no advance knowledge of what the instructions were to be. Strong's counsel objected to the instructions on possession:

"MR. BAKER: As I understood them, Your Honor, on this issue about possession, that as I read——

THE COURT: The one on constructive possession?

MR. BAKER: No, the statute itself, that possession can be——is sufficient prima facie or it's enough evidence for the jury to convict and that——

THE COURT: No, it's enough to satisfy the requirement about knowledge of illegal import.

MR. BAKER: Right. But as the instructions you gave, as I understood them, had the effect of creating an irrebuttable presumption, a conclusive presumption on the issue of knowledge of illegal importation of heroin and I think this is an element that has to be——

THE COURT: Well, I meant to say that the jury could draw the inference of knowledge. I think I did say there is no such thing in the country as legal heroin manufacture or import, but I left it open for them to draw the inference of knowledge.

MR. BAKER: Well, I understood it to be——

THE COURT: Well, do you want me to reinstruct them on that point?

MR. BAKER: Well, yes, I think it should be made clear that it has to be proven that a defendant has knowledge that the heroin has been illegally imported."

Bagby's counsel objected to the possession instruction on the ground:

"that there is no testimony or evidence in this case that the defendant L. C. Bagby ever had possession of any heroin. * * *"

This was followed by a long discussion of an instruction No. 6, apparently offered by the government, only part of which the court gave. The discussion did partially alert the court to the defects we find in the instructions that were given. The court then said:

"THE COURT: Well, would both parties be agreeable if I call them down and instruct them that—I don't want to call undue emphasis to this. I think it's a very trivial question in this particular case, the questions of whether the defendants knew that heroin was illegal is almost ludicrous because everybody of mature years knows that it's illegal, as contraband has been for many years, and there isn't anybody in the country that doesn't know that it's illegal. But if you want me to tell the jury that it's merely an inference, and that if I said 'presumption' I misspoke myself."

Finally, the following occurred:

"MR. BAKER: That's the way I feel. In a nutshell, though, getting back to this instruction No. 6, does the Court intend to bring them down?

THE COURT: No. Well, I really don't, unless the Reporter tells me later that I told them there was a presumption of knowledge of illegality.

MR. BAKER: Well, I have made my objection on the instruction. That's all.

MR. McKEE [Counsel for Bagby]: I think, Your Honor, on behalf of defendant L. C. Bagby, it would cause more undue emphasis on the one particular instruction. I think it would be more harmful to him as a defendant in this case than it would be good to correct."

It is impossible to tell whether the reference to No. 6 is to the government's No. 6, concerning the effect of the § 174 presumption, or to Strong's No. 6 dealing with conspiracy, or to something else.

### 3. *Bagby's appeal.*

#### a. *Objection to the instructions.*

The government argues first, that Bagby's objection to the instructions is not well taken because his counsel predi-.

cated it solely on failure to prove possession, and the evidence is enough to show that he had constructive possession. Second, it argues that he waived any possible objection because he told the court that he did not want the jury further instructed. Third, it argues that he cannot take advantage of objections made by counsel for Strong.

■ First, we agree that an objection based on failure to prove that Bagby had possession is not well taken. We find the evidence sufficient to permit the jury to find, beyond a reasonable doubt, that the four named conspirators did conspire to receive, conceal and facilitate the transportation and concealment of heroin. We think it also sufficient to support a similar finding that Bagby, at the airport, had possession, not "actual," but "constructive," i. e., the power of control over the drug. The § 174 presumption applies to one who does not have actual physical possession of narcotics but whose dominion or control over them is sufficient to give him the power of disposal. United States v. Amaro, 9 Cir., 1970, 422 F.2d 1078, 1080; Hernandez v. United States, 9 Cir., 1962, 300 F.2d 114, 117, 118 n. 9; Rodella v. United States, 9 Cir., 1960, 286 F.2d 306, 311–312, cert. denied, 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199; Mullaney v. United States, 9 Cir., 1936, 82 F.2d 638, 642.

Thurman testified that he did not know until that day that the package was coming or was to be in his name, that Bagby said that he had sent for it, that Bagby was to pay any charges due on the package, and that all Thurman was to get was two spoons of heroin. The jury could find that control of the heroin at the airport was in Bagby, not Thurman, although it was Thurman who actually had the package in his hands. Thus we agree that Bagby's original objection was insufficient.

■ We do not agree that Bagby waived his objection. The court clearly indicated that it would not instruct further on possession unless it found that it had used language other than "infer-

ence." In its instruction, it did say "you may infer." Bagby's objection to further instruction is so unclear as to the subject matter to which it related that we cannot foreclose his position in reliance on it.

■ Nor do we agree that Bagby cannot rely on Strong's objections. To paraphrase Judge Friendly in United States v. Lefkowitz, 2 Cir., 1960, 284 F. 2d 310, 313, n. 1,

"We do not regard the failure of [Bagby's] counsel to except as barring [Bagby] from seeking reversal for error in the charge; [Strong's] exception called the matter to the judge's attention and further exception would have been fruitless."

We think it plain that further exception would also have been fruitless here.

■■ Finally, we find the instructions so confusing and so clearly erroneous as to amount to plain error under Rule 52(b), F.R.Crim.P. We have more than once held that erroneous instructions are cause for reversal, even absent defendant's timely objection, if plain error affecting substantial rights of the defendant occurred. United States v. Harvey, 9 Cir., 1970, 428 F.2d 782, 783 n. 1; Perkins v. United States, 9 Cir., 1963, 315 F.2d 120, 124. In addition, the Supreme Court has emphasized that a conviction should not rest on ambiguous and equivocal instructions to the jury on a basic issue, which we find to be the case here. Bollenbach v. United States, 1946, 326 U.S. 607, 613, 66 S.Ct. 402, 90 L.Ed. 350.

b. *Instructions as to the offense charged.*

■ The trial court listed four elements of the charge. It omitted one essential element, namely, that the heroin was "imported or brought in" to the United States. This is as much an element of a § 174 conspiracy charge as of a § 174 substantive charge. The conspiracy must be to commit a substantive offense defined ("any of such acts") in § 174. The fact of prior illegal importa-

tion is an element of the offense. Turner v. United States, 1970, 396 U.S. 398, 405, 90 S.Ct. 642, 24 L.Ed.2d 610. We would not, however, reverse for this error alone. A finding that a defendant knew that the heroin was imported implies a finding that it was imported. The converse, however, is not true, and that is the vice in the instruction. It was not charged that the conspiracy was to import or bring the drug into the United States. Such a charge would raise different questions.

Moreover, after reading the language of § 174, but before stating the elements of the crime charged, the court instructed the jury about a 1956 statute which made all heroin found in the United States "contraband." 18 U.S.C. § 1402. This was immediately followed by a statement that "[t]he defendants are charged * * * with a conspiracy to violate *these statutes.*" *(Emphasis added.)* This is a completely inaccurate statement and may well have hopelessly confused the jury. No violation of the 1956 statute was charged. Apparently the judge was also confused, as witness his later remarks, when the jury was absent, that "the question of whether the defendants knew that heroin was *illegal* is almost ludicrous because everybody of mature years knows that it's *illegal* as *contraband.* * * *" *(Emphasis added.)* What the court said may be true, but it has nothing to do with violating § 174, which does not make it an offense merely to possess or transport or conceal or deal in heroin or contraband. There must be, or have been, importation, and there must be knowledge of that fact. While it may be that Congress could make mere possession of heroin an offense, it did not do so in § 174. *Cf.* the remarks of Mr. Justice Black, dissenting in *Turner, supra,* at pp. 433–434, 90 S.Ct. 642.

c. *The inference arising from possession.*

The error was further compounded by the instruction that "All heroin found in the United States has been illegally imported." We know of no case that supports such an instruction. Certainly, *Turner, supra,* does not. The opinion of Mr. Justice White does say that the Congress made a legislative finding to that effect (pp. 410–416, 90 S.Ct. 642). But it immediately follows that discussion with the statement that "§ 174 is valid *insofar as it permits a jury to infer* that heroin possessed in this country is a smuggled drug." *(Emphasis added.)* Again, at pp. 417–418, 90 S.Ct. at 653, the Court says:

"We therefore have little doubt that the *inference of knowledge* from the fact of possessing smuggled heroin is a sound one; hence the court's instructions on the inference did not violate the right of Turner to be convicted only on a finding of guilt beyond a reasonable doubt and did not place impermissible pressure upon him to testify in his own defense." *(Emphasis added, footnote omitted.)*

The § 174 inference does not remove the crucial elements of illegal importation and the defendant's knowledge thereof from the consideration of the jury once possession has been established. Both elements remain essential to a conviction under § 174, and both must be proved by the prosecution beyond a reasonable doubt. It was error for the trial court to instruct the jury concerning the legislative fact-finding on which the § 174 presumption rests. The trial court should have made it clear that the section does not require the jury to find knowledge of the illegal importation of heroin, merely because the jury might find that the fact of possession has been established. United States v. Crespo, 2 Cir., 1970, 422 F.2d 718. Here, to the contrary, the trial judge's instructions could have been interpreted by the jury as directing a finding for the prosecution on the essential element of illegal importation.

d. *Imputed possession.*

Under our decisions in Hernandez v. United States, 9 Cir., 1962, 300 F.2d 114, and Jefferson v. United States, 9

Cir., 1965, 340 F.2d 193, the possession of conspirator A cannot be imputed to conspirator B for the purpose of permitting the statutory inferences of importation and knowledge of importation to be drawn against conspirator B. Those inferences can be drawn only against such of the members of the conspiracy as are found by the jury to have themselves had possession of the drug, either actual or constructive. The court's instruction on the inference does not make this clear. It refers to possession by "the defendants or any one of them," as permitting the inference of importation "and that the defendant or defendants in possession knew this fact."

This instruction permits the drawing of the inference of importation against all of the conspirators on the basis of the possession of any one of them, which is directly contrary to *Hernandez* and *Jefferson.* One can read the instruction regarding inference of knowledge of importation as applying that inference only to those defendants having possession. But we doubt that a jury would so understand it, in the context in which it was given, without a fuller explanation of the rule. The error is further compounded by the second following paragraph, which refers to "one who possesses and deals in heroin" as one to whom the § 174 inference of knowledge could be reasonably applied. The two words possess and deal are not necessarily synonymous. Thus the jury may have found that Strong sent the telegram on Bagby's behalf, and thus was "dealing," but that he did not have such control of the heroin as to be in possession, or it may have found that Strong was the principal, and in possession, while Bagby was only acting for him and thus "dealing" and not in possession.

To sum up, we hold that where a § 174 charge does not involve actual importing or bringing in, or a conspiracy to import or bring in, but relates only to activities taking place in the United States:

1. Both the fact of illegal importation of the narcotic and the defendant's knowledge thereof are essential elements of the offense and the jury should be so instructed.

2. The jury should not be instructed about the 1956 law (70 Stat. 572, now 18 U.S.C. § 1402), or that all heroin is contraband (*cf.* 21 U.S.C. § 173). Such an instruction can readily lead the jury to disregard the two elements of importation and knowledge, and is, to say the least, confusing.

3. Where there is evidence of possession, the court can instruct that the law permits the jury to infer both importation and the defendant's knowledge. The court, however, must make it clear that the jury is not required to draw either inference, and that the permissible inferences do not shift the burden of proof nor require the possessing defendant to testify or come forward with evidence. *Cf.* United States v. Crespo, *supra,* 422 F.2d at 720 n. 2.

4. The court may not instruct the jury that all heroin is imported. Any discussion of the likelihood that the heroin involved was imported should make it clear that the court is only stating reasons why the inference is a reasonable one, but that the jury is still free not to draw the inference. *Cf.* Turner v. United States, *supra,* 396 U.S. at 406, 90 S.Ct. 642.

5. In a conspiracy case, where the inferences arising from possession are involved, the court must make it clear that the jury cannot impute the possession of one conspirator to another, and that the inferences can be drawn only against those particular defendants who are found by the jury to have had possession, either actual or constructive. Jefferson v. United States, *supra;* Hernandez v. United States, *supra.*

For error in the instructions, Bagby is entitled to a new trial.

e. *Sufficiency of the evidence.*

On the merits, what we have already said disposes of Bagby's contention that the evidence is insufficient to sustain the verdict against him. We find the evidence sufficient.

930

### f. *Uncorroborated testimony of an accomplice.*

■ Bagby also argues that he cannot be convicted on the uncorroborated testimony of the accomplice Thurman. To this there are two answers. First, there is corroboration in the telephone calls and in the independent testimony about what happened at the airport. Second, Bagby's argument has been repeatedly rejected in this circuit. United States v. Garcia, 9 Cir., 1970, 422 F.2d 1301, 1302; Rosenzweig v. United States, 9 Cir., 1969, 412 F.2d 844, 845; Sabari v. United States, 9 Cir., 1964, 333 F.2d 1019, 1021.

### g. *The court's question concerning fear of retaliation against Thurman.*

■ On cross-examination, Bagby's counsel asked Thurman where he lived. Government counsel objected, asking to be heard outside the presence of the jury. The following then occurred in front of the jury:

"THE COURT: Well, are you concerned about the safety of the witness?

MR. TURNER: I am, Your Honor.

THE COURT: Well, you don't need to give your street address."

There was no objection and no request for a mistrial or for an admonition to the jury. Thus the issue cannot now be raised on appeal unless the comments before the jury were so prejudicial that plain error resulted. People v. Hocker, 9 Cir., 1970, 423 F.2d 960, 965; Singer v. United States, 9 Cir., 1964, 326 F.2d 132, 134, aff'd 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630. We do not find such prejudice in the circumstances of this case.

### h. *Testimony as to Bagby's dealing in heroin*

■ Thurman, asked if he knew how Bagby supported himself, answered "No. He was dealing is all I know.", and that he meant "dealing heroin." The facts testified to were within the witness' knowledge, were not irrelevant to the issues in the case, and were properly admitted.

### i. *Testimony as to the value of the heroin.*

■ Bagby objected to testimony as to the value of the heroin. We have held such testimony relevant and admissible. United States v. Hernandez-Valenzuela, 9 Cir., 1970, 431 F.2d 707.

No other argument advanced by Bagby merits discussion.

### 4. *Strong's appeal.*

■■ We discuss only those points not also raised by Bagby. We find no error or prejudice in the court's denial of Strong's motion for severance. The decision to grant or deny such a motion is largely within the discretion of the trial judge. Opper v. United States, 1954, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101. There was no abuse of that discretion here.

The only substantial question raised by Strong is whether the evidence that he had possession is sufficient. The question is crucial because there is no evidence that the heroin in the parcel had been imported, or that Strong knew that it had. The government's case as to these elements of the offense rests solely on the statutory inferences arising from possession under § 174.

■ There is no evidence that Strong had actual physical possession. It is argued, however, that the jury could find that he had constructive possession,—that Bagby and Strong together ordered the heroin and that they both had control of it. We do not think that the evidence, fairly considered, supports that theory sufficiently to permit a jury to find, beyond a reasonable doubt, that Strong had the requisite control to amount to constructive possession. The jury could find that Strong was an addict, and that Bagby was his source of supply. It could also find that Bagby had given Strong Brazil's secret tele-

phone number, that Strong had talked to Brazil, that the telegram sent by Strong was an order for heroin, and that the money order sent by Strong was a down payment for a supply of heroin. The next inferences, however, are less clearly supportable. One is that the package that arrived was the package ordered by Strong. The telegram speaks of "three bolts." The parcel contained three packets, each containing one "street ounce" of heroin. Perhaps this is enough to support an inference that the parcel was sent in response to the telegram. But we do not think that the record supports a necessary further inference, namely, that the heroin was under Strong's control, either alone or jointly with Bagby. The parcel was not sent to Strong; it was sent to Thurman, and this was at Bagby's request, not Strong's. Bagby told Thurman "that he [Bagby] had had a package sent from Phoenix to Portland in my [Thurman's] name." Bagby did not mention Strong. Bagby, not Strong, was to pay any charges required at the airport. Bagby, not Strong, went to the counter with Thurman to get the package, obviously to protect his interest in the heroin. Bagby was a dealer; there is no evidence that Strong was. On the contrary, the evidence is that Strong was an addict and that Bagby was his source of supply. To us, the far more compelling inference is that Bagby was using Strong, just as he used Thurman, to protect himself in buying heroin from Brazil. We conclude that the evidence is too thin to support a finding of possession by Strong. See Araujo-Lopez v. United States, 9 Cir., 1969, 405 F.2d 466. To allow such a finding in the circumstances of this case would be tantamount to imputing Bagby's constructive possession to his co-conspirator Strong in clear violation of Hernandez v. United States, *supra,* or to allowing guilt by association in violation of Ong Way Jong v. United States, 9 Cir., 1957, 245 F.2d 392.

The judgments are reversed and the case is remanded for further proceedings consistent with this opinion.