UNITED STATES of America, Appellee,

v.

**Richard DeVINCENT a/k/a Vinnie, Appellant.**

UNITED STATES of America, Appellee,

v.

**Robert VISCONTI, Appellant.**

Nos. 76–1224, 76–1225.

United States Court of Appeals,
First Circuit.

Argued Sept. 15, 1976.

Decided Dec. 8, 1976.

**454**

Brian J. McMenimen, Boston, Mass., for Robert Visconti, appellant.

Stephen M. Salon, Boston, Mass., with whom Salon, Silver, McCabe & Sidel, Boston, Mass., on brief for Richard DeVincent, appellant.

Dennis A. Winston, Atty., Dept. of Justice, Washington, D.C., with whom James N. Gabriel, U. S. Atty., Martin Boudreau, Sp. Atty., Justice Dept., Boston, Mass., and Mervyn Hamburg, Atty., Dept. of Justice, Washington, D.C., on brief for appellee.

Before COFFIN, Chief Judge, CLARK *, Associate Justice, U.S. Supreme Court (Ret.), and CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

The appellants were convicted of conspiring to make, and of making, an extortionate extension of credit in violation of 18 U.S.C. § 892(a). The statute is a recent one, aimed at "loan sharks". Several of the issues raised by appellants revolve around the definition of an "extortionate" extension of credit. 18 U.S.C. § 891(6) states that

"[a]n extortionate extension of credit is any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person."

Recognizing that it might be hard to prove the "understanding of the creditor" directly, Congress declared in 18 U.S.C. § 892(b) that "if it is shown that all the following factors were present in connection with the extension of credit in question, there is prima facie evidence that the extension of credit was extortionate . . . ." Congress then listed four factors: that repayment is unenforceable through civil judicial processes; that the loan requires interest greater than 45 per cent a year; that the loan, added to the borrower's existing debts to the same lender exceeds $100; and that the debtor reasonably believes either that the lender has used extortion to collect other debts or that the lender has a reputation for doing so.

■■ The appellants argue that the district court improperly construed these provisions when it instructed the jury in the following language:

"I want to tell you there are two ways in which the government can prove the extensions of credit were extortionate, if you find the extensions of credit were made: The government can prove extensions of credit were extortionate either by direct evidence of the actual belief of Pallotta as to the defendants' collection practices or by establishing the following four facts:" [The court then paraphrased § 892(b).]

Appellants object that in outlining the first method of proof, the judge should have referred to the creditor's understanding that violence would be used to collect the loan. To prevail with this argument, they must show that the omission was plain error, for they made no objection when the instruction was given. F.R.Crim.P. 52(b). We agree that the statute makes the understanding of both the creditor and the debtor crucial to proving a substantive violation of this section. Cf. *United States v. Annoreno*, 460 F.2d 1303, 1310 (7th Cir.), *cert. denied*, 409 U.S. 852, 93 S.Ct. 64, 34 L.Ed.2d 95 (1972). We do not, however, believe that this instruction was plain error. Read as a whole, the charge to the jury conveyed the statute's requirements. At several earlier points in his instruction the judge properly

* Sitting by designation.

charged that the government must prove the creditor's understanding. He talked of the "mutual understanding" of creditor and debtor, and of an "understanding between" the two.[1] Twice he repeated the statutory definition found in § 891(6).[2] The judge's later lapse was, therefore, a harmless one. Particularly is this so when we consider the context of the remark: the court mentioned the "direct" method of proof under § 891(6) only as an introduction and contrast to the less direct route provided by § 892(b).

■ Appellants also find error in the second part of the quoted passage, which is based on § 892(b). Their broadest ground is the unconstitutionality of the presumption[3] that these four factors show the loan to have been extortionate. There are constitutional limits on the use of presumptions in the criminal law. *Tot v. United States,* 319 U.S. 463, 467–68, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); *Leary v. United States,* 395 U.S. 6, 29–44, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). But the presumption created by § 892 does not transgress those limits. When a man with a reputation for violent collection tactics loans more than $100 at an exorbitant rate of interest, and the loan cannot be collected by legal means, we think it highly probable that the loan is "extortionate" within the meaning of § 892. Under either a rational connection or a reasonable doubt standard, the statutory presumption survives, for a juror presented with these basic facts could surely find the presumed fact beyond a reasonable doubt. *Cf. Turner v. United States,* 396 U.S. 398, 416, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Barnes v. United States,* 412 U.S. 837, 843, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

■ Finally, appellants challenge the way in which the trial judge interpreted § 892. The court's instruction that the government "can prove" the loan extortionate by establishing the basic facts, they argue, may have misled the jury into thinking that its autonomy was limited. In fact, the jurors were free to ignore the presumption, even if they believed that the four basic facts had been proved. We agree that the judge's language was unfortunate; it would have been better to let the jury draw its own conclusions from the evidence without any prompting from Congress or the court. And if the presumption had been mentioned at all, the jury should have been told that they were not bound by Congress's determination (although the basis of Congress's determination could have been explained). *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); *United States v. Crespo,* 422 F.2d 718 (2d Cir.), *cert. denied,* 398 U.S. 914, 90 S.Ct. 1716, 26 L.Ed.2d 77 (1970). Nonetheless, the court was technically correct in saying that the government "can" prove its case against the appellants by establishing the four factors of § 892(b); we have already pointed out that finding these factors would justify a guilty verdict. Moreover, unlike the instruction in *United States v. Gainey, supra,* the judge's charge did not impinge on the appellant's Fifth Amendment privi-

---

1. These instructions may have given the appellants more than they were due. The statute does not require a mutual agreement that force will be used to collect the debt; "understanding" is used in the sense of comprehension, not agreement. *United States v. Annoreno, supra,* 460 F.2d at 1308–09.

2. These passages also dispose of appellants' argument that the jury was not informed that the creditor's understanding is a separate element of the crime and must be proven beyond a reasonable doubt. It is true that the instructions generally gave more attention to the debtor's understanding; but a reading of the record reveals that much of the defense was devoted to casting doubt on the debtor's claim that he expected violent collection tactics from these lenders. Understandably, the court's instructions reflect the focus of the parties.

3. The statute speaks of "prima facie evidence" and not of a presumption. In an ideal statute, the two terms would have distinguishable meanings. *See, e. g.,* National Commission on Reform of Federal Criminal Laws, *Study Draft* §§ 103(4) & (5), quoted in *Weinstein's Evidence* ¶ 303[8]. But Congress has not always observed the distinction in the past, and we have no assurance that this statute was drawn with it in mind. *Cf.* Advisory Committee's Note, Supreme Court Standard 303, quoted in *Weinstein's Evidence* ¶ 303. *See also* 1968 U.S.Code Cong. & Ad.News 2026–27.

456

lege. Finally, taking the instruction as a whole, we do not think that this passage reduced the jurors' awareness of their responsibilities and discretion. Before the disputed remarks, the court had clearly set forth the "essential elements" of the crime,[4] and within minutes after the disputed remarks, the court repeated that the jury had a duty "to determine whether the government has proven what I told you were essential elements beyond a reasonable doubt."

■ The next error that the appellants find in the instructions is the statement that "[i]t is only necessary that the government prove that there will be a reasonable basis on which the borrower Peter Pallotta, could have based his fear that default or delinquency on his part could result in harm to him." Out of context, these words could be error, for they seem to permit a conviction if the debtor had reasonable grounds for expecting violence—even if the debtor had no subjective expectation of violence. However, the judge did introduce a subjective element into the charge by speaking of "his" fear rather than "a" fear. The context further neutralizes any danger of misinterpretation. The preceding sentence was: "I want to instruct you . . . that the existence of explicit threats is not required in order for the government to prove the victim's understanding that there was a possibility of harm to him if he didn't make his payments." The judge was merely contrasting explicit threats with implicit ones. *United States v. Annoreno, supra,* 460 F.2d at 1309. In fact the judge was again being more generous than the statute might permit in requiring a reasonable basis for the debtor's understanding that default would be met with violence.

■ Appellants also find errors of omission in the charge. The chief government

witness was an informer who had contradicted on the stand some of his earlier statements. The court cautioned the jury to weigh the credibility of each witness carefully, and to consider any interest the witness had in the outcome of the case. Appellants believe that these words were inadequate, but we see no error in refusing to give a more detailed charge on credibility. Contradictions in the witness's testimony were thoroughly explored on cross-examination, as was any possible bias arising from the witness's relationship with the government. Ordinarily the jury can be expected to take full account of such matters without more instructions than were given here. If the court had decided to give a more elaborate charge, we would not have disturbed his decision, but neither will we disturb his decision not to do so.

■ The court also refused to tell the jury that extortion, not usury, was the essence of the crime charged. Such an instruction may be appropriate in some cases to avoid any confusion arising from the trial or counsels' arguments. But in this case, the high rate of interest received very little emphasis, while considerable attention was directed toward the appellants' threat of violence.

■ Appellants also contest several evidentiary rulings. The judge allowed testimony on appellant DeVincent's twenty-year-old conviction for armed robbery and his ten-year-old murder indictment. Normally, appellant's objections to this testimony would be well taken. Neither of the events could be admitted to show that DeVincent was a bad man. If known to the debtor, however, they can be admitted to show an element of the crime—the understanding of the debtor that default would be punished with violence. The debtor's awareness of the lender's earlier conviction,

4. "There are three essential elements which must be proven beyond a reasonable doubt as to each defendant as to Count 2: First, that he made an extension of about $700 to Pallotta; secondly, that there was an understanding between the defendant and Pallotta, express or implied, tacit or otherwise, that if Pallotta delayed in making his repayments or there was a total failure to repay, that violence or other criminal means would be used to harm Pallotta; and, thirdly, in so doing the defendant acted knowingly, willfully and unlawfully."

or even indictment, for a violent crime surely affects his view of the lender's likely collection practices. F.R.E. 404(b). Both of the revelations came while the debtor was being asked what he knew about the creditors at the time of the loan. Moreover, during this testimony the judge frequently warned the jury that the convictions and indictment were relevant only to the borrower's "frame of mind, in terms of whether or not he had an apprehension he would suffer if he didn't pay this loan. [The past acts are] admitted for no other purpose." We have qualms still, for this testimony was remote and cumulative; the debtor had already testified that he knew DeVincent as a "head-crusher, loanshark enforcer". He also testified that he knew DeVincent and Visconti had been convicted of loan-sharking. But the court, under these circumstances, may have reasoned that the testimony making these matters remote and cumulative also reduced their prejudicial impact. We cannot say the court committed reversible error in admitting the evidence or in refusing to consider all testimony of this sort at a preliminary hearing, though the latter course might have avoided the present problem by revealing that the disputed evidence was redundant.

Appellants raise a number of other evidentiary issues. We have considered them carefully and find them to be without merit. The court's rulings were all proper exercises of a broad discretion. F.R.E. 403, 608(b); *United States v. Honneus,* 508 F.2d 566, 573 (1st Cir. 1974).

*Affirmed.*