## UNITED STATES of America, Plaintiff-Appellee,

### v.

## Albert L. DUNN, Defendant-Appellant.

### No. 80–1146.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1980.

Decided Feb. 23, 1981.

As Amended March 19, 1981.

Rehearing Denied May 28, 1981.

Thomas F. Pitaro, Bilbray, Gibbons & Pitaro, Las Vegas, Nev., for defendant-appellant.

Ruth L. Cohen, Asst. U. S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before GOODWIN and BOOCHEVER, Circuit Judges, and HARRIS,* District Judge.

GOODWIN, Circuit Judge.

The principal issue in this appeal from a conviction of conspiracy to counterfeit United States currency is whether certain marginally prejudicial irregularities, when combined with an extremely thin case for the prosecution, require a new trial.

The only evidence connecting Albert Dunn with the conspiracy was the testimony of one of the counterfeiters who was caught in the act of manufacturing money and who was granted immunity for testifying against Dunn.[1] All of the so-called corroborating evidence of Dunn's cooperation in the venture was consistent with his innocence. He lent the counterfeiters four chairs and a hot plate, of the type for

---

* The Honorable Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas, sitting by designation.

1. The government relies upon the long-standing Ninth Circuit rule that a conviction may be based on "the uncorroborated testimony of an accomplice ... [if it] 'is not incredible or un-

heating water. He agreed to lend them additional items, such as a desk and an electric space heater, but the arrest put the printers out of business before Dunn could deliver the desk and heater.

As noted, the evidence of criminal knowledge upon Dunn's part was nonexistent (other than the testimony of Wexler, the immunized witness). In this context, we consider the two principal grounds urged for reversal.

The least serious irregularity, if it was error at all, was the refusal of the court to delay sentencing so that a new attorney, who had been appointed to replace the one who had tried the case, could obtain a transcript and become familiar with the record in order to present something more than platitudes at the time of sentencing. The trial judge took the position that because Dunn had fired the lawyer who had tried his case, and because Dunn had expressed a desire to proceed with no lawyer at all, Dunn would not be prejudiced by the lack of a transcript before he was sentenced.

Ordinarily, the requested delay would be regarded as a matter within the discretion of the trial court and this court would not disturb it on appeal unless we saw something in the record that indicated that a different sentence might have been imposed had counsel been working from a transcript. Nothing in the record here suggests that a different sentence might have been imposed. For reasons that will appear below, however, we need not reach the validity of the sentence.[2]

After reading and rereading the transcript, we are left with profound uneasiness about the proof of the guilt of this defendant. Dunn was a friend of two of the counterfeiters, and a remote acquaintance of one. The Secret Service, tipped off by an informer, kept constant surveillance by sight and sound of the entire operation from day one until the arrest. This surveillance failed to place Dunn inside the print shop or with the counterfeiters while they were engaged in anything illegal. The woman with whom Dunn was living at the time of his arrest pled guilty to participating in the conspiracy. But she testified that Dunn knew nothing of it.

The government's impeachment of that witness, Mary Jones, raises a question whether Mary Jones' veracity was impeached by legitimate cross-examination. The government concentrated on the criminal convictions of other members of her family. The government makes a rather hollow argument that the crimes of her brother were brought out only incidently to the government's attempt to show that Mary Jones was biased against Harold Green, an associate of her brother's and a key government witness. It was Harold Green who had betrayed Mary Jones to the police.

substantial on its face.'" *United States v. Sigal*, 572 F.2d 1320, 1324 (9th Cir. 1978); *United States v. Turner*, 528 F.2d 143, 161 (9th Cir.), *cert. denied*, 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975), *cert. denied*, 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976); *United States v. Bagby*, 451 F.2d 920, 930 (9th Cir. 1971).

**2.** *See, e.g., United States v. Pinkey*, 551 F.2d 1241, 1249–50 (D.C.Cir.1976); *United States v. Gandara*, 586 F.2d 1156, 1159–60 (7th Cir. 1978).

The ABA Standard (1980) relating to Sentencing Alternatives is advisory. § 18–6.3 reads:

"(e) The defense attorney should recognize that the sentencing stage is the time at which for many defendants the most important service of the entire proceeding can be performed.

. . . . .

"(f) . . . .

(ii) The attorney should satisfy himself or herself that the factual basis for the sentence will be adequate both for the purposes of the sentencing court and, to the extent ascertainable, for the purposes of subsequent dispositional authorities. The attorney should take particular care to make certain that the record of the sentencing proceedings will accurately reflect all relevant mitigating circumstances relating either to the offense or to the characteristics of the defendant which were not disclosed during the guilt phase of the case and to ensure that such record will be adequately preserved: . . . ."

*See generally*, Schulhofer, *Due Process of Sentencing*, 128 U. of Penn.L.Rev. 733, 760–765 (1980); Note, *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv.L.Rev. 821 (1968).

The government's answer is not persuasive. The method used to impeach Mary Jones was wholly irregular and prejudicial. If the government intended to show that Mary Jones was biased against Green, counsel could have elicited the fact that Green had betrayed her; the crimes of her brother were wholly irrelevant. Guilt by association was the government tactic, and it was met by objection. It was error for the district court to permit such a line of questioning. Whether the error was prejudicial, however, is another matter. Ordinarily, we might be able to say with some degree of confidence that the improper questions did not affect the jury's judgment. Mary Jones was not the only co-defendant who testified for Dunn, swearing that he was no part of the conspiracy. Harold Davis testified to the same effect. To convict Dunn as it did, the jury had to disbelieve Davis as well as Mary Jones. But on the whole record, the jury might have believed Mary Jones had she been examined properly by the government. Thus, we cannot declare that the error is harmless.

The judgment is reversed and the cause is remanded for a new trial.